## A93A0184. LOWERY v. THE STATE.
(432 SE2d 576)

BLACKBURN, Judge.

The appellant, Charles Lowery, was charged with aggravated assault, armed robbery, habitual violator, and possession of a firearm by a convicted felon, all stemming from an incident in which he shot his sister. He pleaded guilty to the possession of a firearm charge, and was convicted by a jury of the three other charges. The trial court denied Lowery's motion for new trial, and this appeal followed.

On October 27, 1990, Lowery and his sister started the day by selling some scrap aluminum and using the proceeds to buy beer. Part of the day was spent drinking beer at their mobile home, and then driving around the countryside, culminating with Lowery shooting his sister in the back with a .22 caliber rifle. Exactly how the shooting happened, and what transpired subsequently, was disputed.

Lowery's sister testified that at some point Lowery stopped the car, removed a rifle from the vehicle, and walked through the woods. When he returned, Lowery was irate and told her to do something. She refused, and when she began walking away from the car, Lowery first warned her and then shot her in the back. The bullet entered near her shoulder blade and exited her body at the collarbone.

The sister pleaded with Lowery for him to take her to a doctor, but he refused. Instead, he put her in the hatchback area of the car, covered her with a bedspread, and drove her to a cemetery. He then put her on a bench under a covered shelter on the cemetery grounds, and encouraged her to die. Lowery walked around the cemetery for awhile, and the sister decided to pretend to be dead, hoping that he would leave. However, Lowery approached her, pulled down her pants, "took his hand and done what he wanted to do," and "then masturbated right there." He also reached into her pocket and took a little over $32, saying "you nasty bitch, you won't need this." Lowery then left, and his sister got up and staggered down the road where eventually she was found by a church group on a hay ride.

Lowery testified that he accidentally shot his sister as he attempted to get the rifle from the back floorboard of the car, so that he could shoot at a deer from the driver's side window. The rifle had discharged somehow and struck his sister in the back as she was exiting the car to use the bathroom. He claimed that after his sister finished relieving herself, he helped her get into the hatchback area of the car. He started driving her to his brother's house nearby, but when his sister went into a rage and began trying to choke him and pull his hair from behind, he dropped her off at the covered shelter and then went to look for help. He went straight to the sheriff's department and reported the accidental shooting and his sister's whereabouts so that an ambulance could find her.

Statements given by Lowery to the police after he reported the incident conflicted with portions of his trial testimony. In one statement, he recalled the deer being visible from the passenger side window, that he had accidentally shot his sister as she looked at the deer from inside the car, and that she had not exited the vehicle until after she was shot. He also stated that he tried to help her in the car, but his sister had told him to leave her alone and instead go get help. At trial, Lowery denied having any money when he went to the sheriff's department other than some loose change, but the jailer recalled that he had an undetermined quantity of paper money on his person at the time.

Search of Lowery's vehicle revealed no bullet hole, blood splatter, or spent bullet shell in the interior that would be expected if the shooting had occurred while the sister was a passenger in the vehicle. Blood, however, was found on a pillow and bedspread in the hatchback area.

A firearms examiner with the state crime lab testified that muzzle to target tests on the rifle determined that the weapon had a maximum range of unburned gunpowder spray of two feet; since no gunpowder residue was found on the sister's clothing, the rifle must have been two feet or more from her at the time of the shooting. He estimated that if the shooting had occurred at such short range as claimed by Lowery, there would have been an unburned gunpowder pattern of approximately four inches in diameter on the sister's clothing.

1. Lowery contends that the evidence was insufficient to support the conviction for armed robbery, because of the time span between the use of the weapon and the theft of the sister's money. This contention is without merit.

Under OCGA § 16-8-41 (a), "[a] person commits the offense of armed robbery when, with intent to commit theft, he takes property of another from the person or the immediate presence of another by use of an offensive weapon. . . ." " '[T]he force or intimidation essential to robbery must either precede or be contemporaneous with, and not subsequent to, the taking.' " *Young v. State*, 251 Ga. 153, 157 (303 SE2d 431) (1983).

In the instant case, Lowery first shot his sister and then, several minutes later, took her money, with the rifle still in his possession. Without the shooting, which left the sister in fear of being shot again, Lowery's taking of his sister's money could not have been accomplished. The relatively brief passage of time between the shooting and the taking in this case does not sever that connection between the two acts. Viewing this evidence in the light most favorable to the verdict, we find that the evidence authorized a rational trier of fact to find Lowery guilty beyond a reasonable doubt of the offense of armed rob-

bery. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Testimony was adduced at trial that when Lowery's sister was rescued, she exclaimed that her brother had shot and raped her. At trial, the sister was reluctant to talk about the matter, but when prodded, she explained that Lowery had inserted his hand into her private area while he masturbated himself. Lowery was never charged with any sexual offense, and he contends that this evidence that tended to show that he committed another crime impermissibly placed his character into issue.

However, during the trial, Lowery never objected to this testimony. In fact, although during its opening statement, the state made some reference to the victim's utterances at the time of her rescue, it was Lowery's own attorney who first elicited testimony about the sister's exclamation about Lowery having "raped" her. It was also Lowery's attorney who asked the sister on cross-examination if she had accused Lowery of raping her, and that line of questioning was abandoned only upon the state's objection to it. Under these circumstances, Lowery either waived any objection to the admission of that evidence, or induced it himself. *Heard v. State*, 204 Ga. App. 757, 759 (4) (420 SE2d 639) (1992).

3. Lowery also contends that the trial court erred in not allowing him to introduce evidence that his sister had falsely accused another man of rape on a previous occasion. He relies upon *Smith v. State*, 259 Ga. 135 (377 SE2d 158) (1989), in which the Supreme Court held that the rape-shield law codified at OCGA § 24-2-3 does not prohibit evidence that the victim had previously lied about sexual misconduct by men other than the defendant. However, *Smith* is inapposite here, because Lowery was not on trial for any sexual offense.

"Evidence must relate to the questions being tried by the jury and bear upon them either directly or indirectly. Irrelevant matter should be excluded." OCGA § 24-2-1. Inasmuch as Lowery was not charged with committing a sexual offense against his sister, and particularly in light of the fact that the sister eventually explained that no rape occurred, any evidence that Lowery's sister may have falsely accused another individual of rape on a previous occasion would have no bearing on the issues at trial in this case, i.e., armed robbery, aggravated assault, and habitual violator, and the trial court properly disallowed that inquiry.

4. Lowery next contends that his conviction for aggravated assault should have merged with his conviction for armed robbery as a matter of fact, because the evidence of the same shooting was used to prove both offenses. We are compelled to agree, under the particular facts of this case.

In *Cherry v. State*, 178 Ga. App. 483, 485 (4) (343 SE2d 510)

(1986), where the indictments for armed robbery and aggravated assault alleged precisely the same shooting, we held that *"[u]nder the indictments as drawn,* the aggravated assault conviction must merge with the robbery conviction. [Cit.]" (Emphasis supplied.) In the instant case, the indictment charged Lowery with having committed an aggravated assault "with a certain .22 caliber rifle, a deadly weapon, by shooting [the victim] in the neck with said rifle. . . ." The indictment's charge of armed robbery alleged that Lowery took money from the victim "by the use of an offensive weapon, to-wit: a certain .22 caliber rifle and in the course of said robbery intentionally inflicted serious bodily injury to [the victim] by shooting [her] in the neck with said rifle. . . ." Because the same shooting was used to prove both offenses under the indictment *as drawn in this case,* as in *Cherry v. State,* supra, the aggravated assault merged with the armed robbery, requiring vacating the conviction for aggravated assault.

We emphasize that aggravated assault is not a lesser included offense of armed robbery as a matter of law, and the two offenses rarely merge as a matter of fact. See *State v. Hightower,* 252 Ga. 220 (312 SE2d 610) (1984); *Evans v. State,* 173 Ga. App. 655 (327 SE2d 784) (1985). In fact, in *Evans,* this court found no merger where the same shooting was used to prove both an aggravated assault and an armed robbery. However, *Evans* did not address the manner in which the two crimes were charged in the indictment.

The evidence in the instant case would have supported separate convictions for both aggravated assault and armed robbery, given a properly drawn indictment. The aggravated assault, of course, was shown by the evidence of the shooting itself. With regard to the charge of armed robbery, the requisite element of use of an offensive weapon would have been satisfied by the evidence of Lowery's continued possession of the rifle at the time he took the money from his sister's pocket subsequent to the aggravated assault. However, with the subject indictment, use of that evidence as proof of the armed robbery would have created a material variance between the specific allegations contained in the inartfully drawn indictment and the proof. As discussed above, because of the very specific manner in which the indictments were drawn in this case, we are compelled to follow *Cherry v. State,* supra, and find that the aggravated assault merged with the armed robbery. Accordingly, the conviction and sentence imposed for the aggravated assault must be vacated.

5. Lowery also asserts that a material and fatal variance existed between the indictment and the evidence adduced at trial regarding the armed robbery. " 'The general rule that allegations and proof must correspond is based upon the obvious requirements (1) that the accused shall be definitely informed as to the charges against him, so that he may be enabled to present his defense and not be taken by

surprise by the evidence offered at the trial; and (2) that he may be protected against another prosecution for the same offense.' (Citations omitted.) Berger v. United States, 295 U. S. 78, 82 (55 SC 629, 79 LE 1314) [(1934)]." *De Palma v. State*, 225 Ga. 465, 469-470 (169 SE2d 801) (1969).

'    In the instant case, we reject Lowery's contention that the time span between the shooting of the victim and the actual taking of the victim's money created a fatal variance between the proof and the indictment. It cannot reasonably be found that the indictment failed to inform Lowery of the charges against him, or that the relatively brief passage of time between the shooting and the taking surprised Lowery, or subjected him to a risk of another prosecution for the same offense.

*Judgment affirmed in part and vacated in part in accordance with Division 4. Johnson and Smith, JJ., concur.*

DECIDED MAY 26, 1993 —
RECONSIDERATION DENIED JUNE 10, 1993.

*David M. Rosenberg, William L. Reilly*, for appellant.
*Roger G. Queen, District Attorney*, for appellee.