A97A0237. SHROPSHIRE v. THE STATE.
(480 SE2d 919)

ELDRIDGE, Judge.

Appellant appeals his conviction for robbery. His sole enumeration of error questions the sufficiency of the evidence to authorize the conviction. Appellant alleges he was entitled as a matter of law to a directed verdict because any threat or intimidation, which is an essential element of robbery, occurred subsequent to the taking.

"A directed verdict of acquittal is proper only where there is no conflict in the evidence and the evidence introduced with all reasonable deductions and inferences therefrom shall demand a verdict of acquittal. OCGA § 17-9-1 (a). On appeal we must view the evidence in the light most favorable to the verdict, [Shropshire] no longer enjoys the presumption of innocence, and we do not weigh the evidence nor judge the credibility of the witnesses. Further, we do not speculate which evidence the jury chose to believe or disbelieve." (Citations and punctuation omitted.) *Thompson v. State*, 210 Ga. App. 655, 656 (436 SE2d 799) (1993).

Under OCGA § 16-8-40 (a), "[a] person commits the offense of

robbery when, with intent to commit theft, he takes property of another from the person or the immediate presence of another: (1) [b]y use of force; (2) [b]y intimidation, by the use of threat or coercion, or by placing such person in fear of immediate serious bodily injury to himself or to another." "The force or intimidation essential to robbery must either precede or be contemporaneous with, and not subsequent to, the taking. *Young v. State*, 251 Ga. 153, 157 (303 SE2d 431) (1983)." (Punctuation omitted.) *Lowery v. State*, 209 Ga. App. 5, 6 (432 SE2d 576) (1993); see *Hicks v. State*, 232 Ga. 393 (207 SE2d 30) (1974); *Ramey v. State*, 206 Ga. App. 308 (425 SE2d 385) (1992).

In the case sub judice, the evidence shows that appellant went into a convenience store on a Sunday, a day when the sale of beer was not allowed. Signs, which were located at the coolers, indicated that beer sales were not allowed on Sundays, and a bar had been placed through the handles of the cooler that contained beer so that the doors could not be opened without removing the bar. When appellant entered the store, he walked to the back of the store where the cooler containing the beer was located. He began yanking the doors, which would not open, causing a loud banging noise. Appellant finally broke the bar and managed to get the door open part of the way. He then reached into the cooler and removed three cases of beer; each case contained 24 beers.

Connie Stinson, who was the sales clerk on duty, testified that appellant did not act like a normal customer, he was uncoordinated, he staggered as he walked, his eyes appeared very large, he looked "crazed," and she felt that he was under the influence of something. He dropped one of the cases, causing the beer to burst and spill "all over the floor." Appellant then proceeded up the aisle toward the front of the store with one case of beer under his left arm and the other case of beer in his left hand; his right hand was free. At that point in time, Stinson attempted to explain to the appellant that she could not sell him any beer. Appellant replied in a voice that "wasn't nice" that "[he] didn't ask [her] to sell him any beer." Stinson testified that, at this point, she became frightened and "hit the silent alarm" because "[she] didn't know how much he was going to take."

The appellant continued to proceed up the aisle with the beer, and when he reached the counter, he started grabbing packages of cigarettes. Stinson testified that she felt she would be safer away from the cash register. She moved away from it and hid behind a counter where the appellant could not see her. Stinson testified she heard the cash register start "screaming" or making a noise that would occur when someone "hit a wrong key or touched the cash register in a wrong way," and thought the appellant was trying to open the cash register. Stinson testified that appellant then left the store. Appellant dropped several packages of cigarettes on the way out, and

approximately 10 packages were missing from the cigarette count.

Stinson testified that she had been instructed to get the tag number of anyone who took anything from the store. Therefore, when appellant exited the store and began "throwing the beer into his car," she went out the door and hid behind her car. Stinson's pen would not write, and she attempted to write appellant's tag number in the dew on the trunk lid of her car. At this point, the appellant saw Stinson, made eye contact with her, and screamed at her if she did not get her "A-S-S back in the room or back into the store he was going to shoot [her]." Even though Stinson did not see a gun, she testified that she was in fear for her safety.

This Court does not agree with appellant's assertion that the only act of intimidation by appellant was his statement in the parking lot as he was leaving and Stinson was attempting to write down his tag number. It is clear from the evidence that the appellant, by his behavior and demeanor in the store, intimidated Stinson and made her fearful for her safety, and that appellant might do her immediate serious bodily injury. Appellant's belligerent response to Stinson's attempt to stop him by telling him she could not sell him the beer, coupled with his using physical force to break into the beer cooler and the fact that he appeared to be "crazed" or under the influence of drugs or alcohol, was such to create a reasonable apprehension on the part of Stinson that the appellant might do her immediate serious bodily injury in order to take the items. In fact, Stinson showed by her behavior that she was, in fact, intimidated; she pushed the silent alarm and hid in an area away from the cash register because she felt she would be safer. Appellant's later conduct in the parking lot, when he threatened to shoot Stinson if she did not get back into the store, confirms that, in fact, her fear of immediate serious bodily injury was both reasonable and justified.

The fact that Stinson followed the appellant into the parking lot does not show that she was not intimidated and in fear of immediate serious bodily injury because of appellant's behavior in the store. Stinson testified that the only reason she went outside was because she had been instructed to try and get the tag number of anyone taking items from the store. Furthermore, Stinson did not just follow the appellant out of the store, she tried to stay out of his sight and hid behind her car.

The evidence in the case sub judice is sufficient for a rational trier of fact to have found appellant guilty beyond a reasonable doubt of the offense of robbery. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

*Judgment affirmed. Birdsong, P. J., and Ruffin, J., concur.*

DECIDED FEBRUARY 5, 1997.

*Sawyer & Sawyer, Horace K. Sawyer III*, for appellant.
*Herbert E. Franklin, District Attorney, Michael J. Moeller, Assistant District Attorney*, for appellee.