A98A2386. HUDSON v. THE STATE.
(508 SE2d 682)

ELDRIDGE, Judge.

Defendant George Sherman Hudson III appeals his January 1997 conviction for armed robbery. We affirm.

"On appeal[,] the evidence must be viewed in a light most favorable to the verdict, and appellant no longer enjoys a presumption of innocence; moreover, on appeal this [C]ourt determines evidence suf-

ficiency and does not weigh the evidence or determine witness credibility. [Cits.]" *Grant v. State*, 195 Ga. App. 463, 464 (1) (393 SE2d 737) (1990). The facts, viewed in this light, are as follows: On August 2, 1996, Hudson traveled from his home in Atlanta to Augusta, Richmond County, and checked into a Red Carpet Inn. He then drove to the Professional Detail Shop on Walton Way ("the shop") to see the owner, Darrell Rouse, a/k/a "Shaq." Rouse allegedly owed Hudson $3,800. A shop employee testified that he noticed that Hudson had a .357 revolver on the front seat of his car. When Hudson realized that Rouse was not at the shop, he instructed shop employees to "tell him [Rouse] I'm looking for him" and then left.

A week later, on August 8, 1996, Hudson returned to Augusta in a Ford Explorer with his cousin, Reginald Leon Walker, and an acquaintance, Thad Christopher McClamey. The men went to the shop and asked to see Rouse, who was not there. While waiting for Rouse to return, the men decided to get the Ford Explorer washed and a shop employee took the keys. Within a few minutes, Rouse arrived at the shop with two friends in his rented Toyota Camry. Rouse went into the shop office with Hudson, Walker, and McClamey, where they engaged in a heated argument. As Rouse attempted to exit the office, Walker shot him in the leg, arm, and chest. Rouse collapsed and died in the parking lot. As they attempted to leave the scene, the three co-defendants were unable to find the keys to the Ford Explorer, so they took Rouse's rented Toyota. They drove the car to the Columbia, South Carolina airport and took an airplane back to Atlanta.

When the police arrived at the shop within minutes of the shooting, they found the Ford Explorer in the back parking lot with its doors open. Inside the vehicle, police found, inter alia, Hudson's driver's license and ammunition for an automatic weapon. That evening, Hudson contacted the Richmond County Sheriff's Department and admitted that he was "involved" in the shooting at the shop. He was subsequently arrested and charged with murder, felony murder, armed robbery, and possession of a firearm during the commission of certain crimes.

Although Hudson and McClamey both filed and argued motions to sever, such motions were denied by the trial court. A joint trial was conducted, with each defendant represented by individual defense counsel. At trial, the State presented the testimony of several witnesses to the shooting and/or the subsequent theft of Rouse's car. Neither Hudson nor McClamey testified. However, co-defendant Walker took the stand and admitted shooting Rouse, claiming self-defense. After hearing the evidence, a jury convicted Hudson of

armed robbery and acquitted him of the other charges.[1] Hudson's motion for new trial was denied by the trial court, and he appeals.

1. (a) In his first three enumerations, Hudson contends that the evidence was insufficient to support his conviction for armed robbery because he and his co-defendants took the victim's car as an "afterthought," i.e., after they were unable to find the keys to the Ford Explorer. As such, he claims that he lacked the requisite intent to commit theft prior to the death of the victim.

However, similar contentions have been rejected repeatedly by this Court and the Supreme Court of Georgia.[2] "Under OCGA § 16-8-41 (a), a person commits the offense of armed robbery when, with intent to commit theft, he takes property of another from the person or the immediate presence of another by use of an offensive weapon. The force or intimidation essential to robbery must either precede or be contemporaneous with, and not subsequent to, the taking. *Young v. State*, 251 Ga. 153, 157 (303 SE2d 431) (1983)." (Punctuation omitted.) *Lowery v. State*, 209 Ga. App. 5, 6 (1) (432 SE2d 576) (1993). "Where, as here, the evidence is sufficient to authorize a finding that the theft was completed *after* force was employed against the victim, a conviction for armed robbery is authorized regardless of when the intent to take the victim's property arose, regardless of whether the victim was incapacitated and even if the victim had been killed instantly." (Citations and punctuation omitted; emphasis in original.) *Francis v. State*, 266 Ga. 69, 70-71 (463 SE2d 859) (1995).

(b) Contrary to Hudson's contentions otherwise, this Court's holding in *Lowery v. State*, supra, is applicable herein. In *Lowery*, a defendant shot his sister and, several minutes later, sexually assaulted her, took her money, and left her to die. However, his sister staggered to the road, where she was discovered by a church group on a hay ride. Following a jury trial, the defendant was convicted of, inter alia, armed robbery. In rejecting the defendant's argument that he could not be convicted of armed robbery because of the time span between the use of the weapon and the theft of the money, this Court found that, without the shooting, the theft could not have been accomplished, so that "[t]he relatively brief passage of time between the shooting and the taking in this case does not sever that connection between the two acts." Id. at 6. Such holding is just as applicable

---

[1] Co-defendant McClamey also was convicted of armed robbery, while Walker was convicted of felony murder, armed robbery, and possession of a firearm during the commission of certain crimes.

[2] See *Francis v. State*, 266 Ga. 69, 70 (463 SE2d 859) (1995); *Crowe v. State*, 265 Ga. 582, 594 (21) (458 SE2d 799) (1995); *Prince v. State*, 257 Ga. 84, 85 (1) (355 SE2d 424) (1987); *Davis v. State*, 255 Ga. 588, 593 (3) (b) (340 SE2d 862) (1986); *Young v. State*, 251 Ga. 153, 156 (3) (303 SE2d 431) (1983); *Wynn v. State*, 228 Ga. App. 124, 126 (1) (491 SE2d 149) (1997).

in the case before us, which clearly involved an even shorter period of time than that exhibited in *Lowery*.

(c) Further, although the evidence supported a finding that Hudson had a handgun in his possession at the time of the crime, even if the jury had determined that he was unarmed at the time of the crime, he still could have been convicted of armed robbery. The undisputed evidence showed that Hudson participated in confronting Rouse immediately prior to the moment when Walker shot and killed Rouse, and that Hudson then left the shop with his co-defendants in Rouse's car. Accordingly, he was, at a minimum, a party to the crime of armed robbery, and the jury was so charged. See OCGA §§ 16-2-20 (b) (3); 16-2-21.

"Construing the evidence most strongly in favor of the State, it was sufficient to authorize a rational trier of fact to find proof of [Hudson's] guilt of armed robbery . . . beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979)." *Francis v. State*, supra at 71 (1).

2. In his next enumeration, Hudson asserts that the trial court erred when, "after finding a *Batson*[3] violation in regard to juror number twelve[,] failed to reseat said struck juror or follow the proper procedures in remedying the violation." However, the trial transcript clearly shows that the trial court, in fact, *did not* find a *Batson* violation. The State utilized five of its six strikes against African-American females. When defense counsel objected and asserted a *Batson* violation, the State articulated specific, race-neutral reasons for each strike. After defense counsel challenged these reasons, the trial court made the following statement: "Let's just take *for example* that I find the first one that you've raised, number 12, as not being — [the State] had not given a sufficient reason for that." (Emphasis supplied.) He then speculated that, if he put juror no. 12 back on the jury, then he would have to take off another female African-American, "so I haven't accomplished anything." Defense counsel then continued to argue that the five jurors were illegally struck and suggested several procedures for reseating these jurors on the panel *if the trial court determined that the strikes were improper*. The State responded with additional, specific justifications for the strikes. Following such arguments, the trial court denied the *Batson* motion, determining that the defendants did not prove that the State acted with discriminatory intent in exercising its strikes.

Accordingly, the trial court properly followed the three-step procedure in addressing the *Batson* objection. See *Jackson v. State*, 265 Ga. 897, 898-899 (2) (463 SE2d 699) (1995); *Gardner v. State*, 225 Ga.

---

[3] *Batson v. Kentucky*, 476 U. S. 79 (106 SC 1712, 90 LE2d 69) (1986).

App. 427 (483 SE2d 912) (1997). "[U]nder *Purkett* [*v. Elem*, 514 U. S. 765 (115 SC 1769, 131 LE2d 834) (1995),] the ultimate *Batson* appellate inquiry concerns only whether the trial court's credibility determination that racial motivation did not exist was clearly in error." (Emphasis omitted.) Id. at 431. In this case, we find no such error.

3. In his final enumeration, Hudson complains that he was denied effective assistance of counsel at trial due to an alleged "conflict of interest" with his appointed counsel. Hudson asserts that trial counsel failed to give him discovery materials to review prior to trial; failed to interview certain witnesses; failed to file a motion to sever on his behalf; and "was affiliated" with the victim's family. Hudson also contends that, because he had complained to the State Bar immediately prior to trial about counsel's performance in preparing for trial, counsel should have notified the trial court of such conflict of interest, so that new counsel could be appointed. However, Hudson has failed to demonstrate an actual conflict of interest with counsel, that counsel's performance was deficient, or that any alleged deficiency adversely affected the outcome of the trial.

(a) Hudson asserts that an actual conflict of interest existed on two fronts: (1) that counsel previously was "affiliated" with the victim's family, and (2) that a conflict arose when he filed a complaint with the State Bar against counsel.

However, Hudson failed to provide any evidence that an association between counsel and the victim's family ever existed. Further, even if the trial court had accepted Hudson's assertion of such potential conflict, prejudice to the defendant "is presumed only if the defendant demonstrates that counsel actively represented conflicting interests and that an actual conflict of interest adversely affected his lawyer's performance." (Citations and punctuation omitted.) *Weeks v. State*, 190 Ga. App. 373, 374 (378 SE2d 895) (1989). See also *Hill v. State*, 269 Ga. 23, 24 (494 SE2d 661) (1998); *Hudson v. State*, 250 Ga. 479, 482 (299 SE2d 531) (1983); *Bertholf v. State*, 224 Ga. App. 831, 832-833 (2) (a) (482 SE2d 469) (1997); *Datz v. State*, 210 Ga. App. 517, 518 (3) (b) (436 SE2d 506) (1993). Nothing in the record shows that, if counsel previously worked with members of the victim's family, such relationship still existed or that any past relationship affected counsel's performance to Hudson's detriment. See Division 3 (b), infra. Accordingly, this claim is without merit.

Further, counsel's testimony at the hearing on Hudson's motion for new trial demonstrated that, when counsel announced ready for trial, he was not aware that Hudson had filed a State Bar complaint against him a few days earlier. The evidence showed that Hudson sent a letter to the State Bar complaining of counsel's pre-trial performance on January 11, 1997. The letter was received by the State Bar on January 16, 1997. In the meantime, the trial started on Janu-

ary 14 and concluded on January 16, 1997. Counsel testified at the hearing on Hudson's motion for new trial that he first became aware of the State Bar complaint in February 1997, when he received a letter from the State Bar. Although Hudson claims that, during the trial, he sent a note to the trial court informing it of the State Bar complaint, the trial court denied that it ever received such note.

There can be no error in counsel's failure to notify the trial court of an alleged conflict of which he is unaware. Accordingly, we find no error in counsel's representation of Hudson at trial under these circumstances.

(b) Hudson's remaining allegations of an "actual conflict of interest" are, in fact, assertions of disagreements he had with counsel concerning pre-trial communications and trial strategies. As such, Hudson was not entitled to a new trial simply because he was dissatisfied with counsel's performance unless he can demonstrate "that counsel's performance was deficient and that this deficiency prejudiced the outcome of the case. [Cit.]" *Hammonds v. State*, 218 Ga. App. 423, 424 (1) (461 SE2d 589) (1995). See also *Strickland v. Washington*, 466 U. S. 668, 687 (104 SC 2052, 80 LE2d 674) (1984); *Cotton v. State*, 223 Ga. App. 288, 289-290 (2) (477 SE2d 425) (1996); *Datz v. State*, supra at 519 (3) (d). "There is a strong presumption that trial counsel's performance falls within the wide range of reasonable professional assistance, and that any challenged action by trial counsel might be considered sound trial strategy. [Cit.]" Id. at 518 (3). "The fact that [the defendant] and his present counsel now disagree with the difficult decisions regarding trial tactics and strategy made by trial counsel does not require a finding that [the defendant] received representation amounting to ineffective assistance of counsel. This is true even if trial counsel's tactics or strategy may have been unwise." (Citations and punctuation omitted.) *Ross v. State*, 231 Ga. App. 793, 799 (7) (499 SE2d 642) (1998). Further, "a trial court's finding that [the defendant] had been afforded effective assistance of counsel must be upheld unless that finding is clearly erroneous [cit.]; the trial court's findings were not clearly erroneous." *Datz v. State*, supra at 519 (3) (d).

Before reviewing Hudson's assertions concerning asserted deficiencies in trial counsel's performance, we note that the evidence presented at trial was overwhelming and undisputed that Hudson actively participated in the incident which resulted in the death of Rouse and the subsequent theft of his vehicle. The evidence showed that Hudson had been to Augusta a week prior to the incident; that he was looking for Rouse; and that Hudson possessed a .357 revolver during this prior visit. Shop employees identified Hudson as being one of the three men who arrived at the shop on the day of the murder and who subsequently confronted Rouse in his office. Hudson's

driver's license was found in the Ford Explorer that Hudson and his co-defendants abandoned at the scene after they escaped in Rouse's vehicle.

(i) Hudson does not challenge the trial court's decision not to sever the trial but, instead, asserts that he instructed counsel to file such motion and that counsel allegedly failed to do so as quickly as Hudson desired. Hudson asserts that such failure amounted to a deficiency entitling him to a new trial. However, counsel did, in fact, file a timely motion to sever. In addition, counsel for his co-defendant, McClamey, filed a motion to sever. Both motions were argued pre-trial and were denied by the trial court. Accordingly, Hudson is unable to demonstrate that counsel's performance was deficient or that any harm resulted from counsel's allegedly delayed, yet timely, filing of a motion to sever.

(ii) Next, Hudson complains that counsel met with him only three times between the time of counsel's appointment to the case and the trial two weeks later. However, counsel asserts that he met with Hudson at least five times in the same two-week period; that they reviewed the evidence together; and that they discussed trial strategy. "There exists no specified amount of time which a counsel must spend in preparation for trial; each situation must be judged upon its own circumstances and in light of its own degree of complexity. [Cit.]" *Datz v. State*, supra at 518 (3) (a). Under the facts of this case, the trial court's determination that counsel's pre-trial preparation was not deficient was not clearly erroneous.

(iii) Hudson complains that counsel should have filed a motion in limine to exclude statements by two shop employees which established that Hudson previously had come to the shop looking for Rouse while in possession of a revolver, asserting that the prejudicial effect of the testimony greatly outweighed its probative value. However, this evidence is clearly probative of Hudson's active participation in the crime, countering any assertion that Hudson was merely present at the scene. Such evidence was admissible, with its weight to be determined by the jury, even if it incidentally placed Hudson's character in evidence. See *Walraven v. State*, 250 Ga. 401, 407 (4) (b) (297 SE2d 278) (1982); *Sabo v. State*, 226 Ga. App. 106, 108 (485 SE2d 591) (1997); *Johnson v. State*, 224 Ga. App. 568, 569-570 (481 SE2d 268) (1997); *Jackson v. State*, 209 Ga. App. 217, 219-220 (3) (433 SE2d 655) (1993). "Moreover, admission of evidence is within the sound discretion of the trial court and appellate courts will not interfere absent abuse of that discretion. Evidence having a tendency to establish facts in issue is relevant and admissible, and no matter how slight the probative value, our law favors admission of relevant evidence. [Cit.]" *Mantooth v. State*, 197 Ga. App. 797, 800 (5) (399 SE2d 505) (1990). Accordingly, counsel's failure to file a motion in

limine to exclude admissible evidence or to object to such evidence at trial does not demonstrate deficient performance by counsel. See *Williams v. State*, 234 Ga. App. 191, 193-194 (2) (b) (506 SE2d 237) (1998); *Ross v. State*, supra at 799 (9).

Further, testimony by a police officer that Hudson called him and admitted being "involved" in the incident was merely cumulative of the overwhelming evidence that Hudson was an active participant in both Rouse's murder, of which he was acquitted, and the armed robbery.[4] Even if the failure to object to such testimony was evidence of counsel's deficient performance, it is unlikely that such deficiency contributed to the jury's decision to convict Hudson of the armed robbery. See *Caston v. State*, 178 Ga. App. 752, 754 (1) (344 SE2d 725) (1986). Accordingly, there was no error.

(iv) As to Hudson's remaining examples of counsel's alleged deficient performance, we find that such allegations either are not supported by the record, involved issues of credibility which were resolved by the trial court, were explained by counsel as decisions regarding trial strategies, or involved disputes which occurred after the trial. There was no error in the trial court's rejection of Hudson's allegations and in its finding that Hudson received effective assistance of counsel.

*Judgment affirmed. McMurray, P. J., and Blackburn, J., concur.*

DECIDED OCTOBER 26, 1998.

*Jeffrey S. Bowman*, for appellant.
*Daniel J. Craig, District Attorney, Charles R. Sheppard, Assistant District Attorney*, for appellee.

---

[4] The remaining portion of Hudson's statement was excluded by the trial court upon objection by counsel for Hudson and each of his co-defendants, because of an alleged failure by the State to provide the complete statement during discovery and because the statement implicated Hudson's co-defendants.