A04A1996. KIRK v. THE STATE.
(610 SE2d 604)

MIKELL, Judge.

Michael Kirk was indicted for armed robbery (Count 1), two counts of aggravated assault (Counts 2 and 4), theft by taking (Count 3), and escape (Count 5). The trial court dismissed the charge of theft by taking and a jury convicted Kirk of all remaining charges except aggravated assault on a police officer. The court sentenced him to concurrent 20 year sentences for armed robbery and aggravated assault. Kirk appeals the denial of his motion for directed verdict and motion for new trial, arguing that the evidence was insufficient to support his conviction for armed robbery and aggravated assault. He also contends that the trial court erred in overruling his objection to a portion of the state's closing argument; in failing to merge the armed robbery and aggravated assault convictions; and in failing to

give his requested charge that the force used to commit the robbery must be contemporaneous with the taking. Finding no error, we affirm.

1. In two related enumerations, Kirk contends that the evidence was insufficient to support his convictions for armed robbery and aggravated assault and that the trial court erred in denying his motion for directed verdict on the armed robbery charge because the state failed to prove that he used a gun to rob the victim. We disagree.

> On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict, and the defendant no longer enjoys the presumption of innocence. We do not weigh the evidence or determine witness credibility, but only determine if the evidence was sufficient for a rational trier of fact to find the defendant guilty of the charged offense beyond a reasonable doubt.[1]

This test applies "when the sufficiency of the evidence is challenged, whether the challenge arises from the [denial] of a motion for directed verdict or the [denial] of a motion for new trial."[2]

Viewed in this light, the record shows that on August 25, 1998, at approximately 11:30 a.m., Willie Smith, a coin collector for Mac-Gray Laundry Services, arrived at Oak Crest Apartments to collect money from the washers and dryers. Kirk followed Smith into the laundry room and told him that he had lost money in one of the machines. Smith told Kirk about Mac-Gray's refund policy and then Kirk left. While Smith was kneeling in front of one of the dryers, the lights went out and Smith heard his collection bag move. As Smith stood up, Kirk came up behind him, pointed a gun at the left side of his neck and instructed him to turn around and face the dryers. When Smith turned to his right to see if Kirk was leaving, Kirk again pointed the gun at Smith's neck, instructed him to kneel down facing the dryers, and demanded his wallet and keys. Kirk went through Smith's wallet and then left the room with the bag of coins totaling $1,746. Kirk drove away in Smith's van. Smith hid between the machines until he was sure Kirk was gone and then walked to a Kentucky Fried Chicken where he called police.

Officer Franklin Huff of the City of Atlanta Police Department (the "APD") testified that he was on patrol in the area of Woodlawn Avenue when two individuals flagged him down to report a suspicious

---

[1] (Citation and footnote omitted.) *Sexton v. State*, 268 Ga. App. 736 (1) (603 SE2d 66) (2004). See *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

[2] (Citation omitted.) *Millirons v. State*, 268 Ga. App. 644, 645 (1) (602 SE2d 346) (2004).

van. The individuals had observed several men taking items from the van and placing them in a yellow vehicle parked behind the van. When Huff inspected the van he found several empty coin bags and a set of keys. A short time later, Huff observed the yellow vehicle driving down North Avenue and began following it. The driver of the vehicle stopped and jumped out, exclaiming that he "didn't do anything." Huff arrested the driver and a passenger, later identified as Kirk, who emerged from a wooded area near where the vehicle had stopped. Huff retrieved several bags of coins and a coin counter from the wooded area.

Detective Capus Long of the APD brought Smith to the scene of the arrest, where he identified Kirk as the man who robbed him. Kirk told Long that he took the money and the van, but that he "didn't have a gun."

Smith testified that he complied with Kirk's demands because "I was so scared that I didn't want to look up any more because I didn't want to rattle him, I guess. I was wanting him to know that I was cooperating." Smith further testified that after giving Kirk his keys, he

> put [his] head back down on the floor. I thought, well, he's got everything he wants now. And he had everything but he kept hanging around the laundry room and I thought, well, it's going to happen now. And I put my head all the way down on the floor, and I covered my head with my forearms. I thought if I get shot, I don't want to be shot in the head. And I guess I was praying at the time, too. And I thought I have two small kids at home. I thought it would be a sad night for my family that night.

Kirk testified that he took the coin bag from the table in the laundry room, pointed his finger at Smith and told Smith to stay down. Kirk then drove off in Smith's van. According to Kirk, the keys were in the van and the door was open. Kirk denied pointing a gun at Smith.

(a) Kirk contends that the trial court erred in denying his motion for directed verdict on the charge of armed robbery because there was insufficient evidence that he used a gun to rob Smith. Alternatively, Kirk argues that even if the evidence was sufficient to show that he used a gun, appropriation of the coin bag occurred *before* Kirk brandished the gun. We disagree.

In the indictment, the state alleged that Kirk committed the offense of armed robbery by "unlawfully, with intent to commit theft, take from the person and immediate presence of Willie Smith, $1746.00 in coins, of value, and the property of Willie Smith, by

intimidation and by use of a handgun, an offensive weapon." "A person commits the offense of armed robbery when, with intent to commit theft, he or she takes property of another from the person or the immediate presence of another by use of an offensive weapon, or any replica, article, or device having the appearance of such weapon."[3] Pursuant to this statute,

> the presence of a weapon is necessary to a conviction for armed robbery. But the presence of such a weapon may be established by circumstantial evidence, and a conviction for armed robbery may be sustained even though the weapon itself was neither seen nor accurately described by the victim. Some physical manifestation of a weapon is required, however, *or some evidence from which the presence of a weapon may be inferred.* Furthermore, the question is whether the defendant's acts created a reasonable apprehension on the part of the victim that an offensive weapon was being used, regardless of whether the victim actually saw the weapon.[4]

Moreover, "[t]he force or intimidation essential to robbery must either *precede or be contemporaneous with,* and not subsequent to, the taking."[5]

In this case, Smith testified that Kirk picked up the coin bag from the table in the laundry room, twice pointed a gun at Smith's neck, ordered him to kneel, demanded his wallet and keys and then left the laundry room with the coin bag and Smith's keys. Kirk contends that Smith's testimony fluctuates as to whether Kirk brandished a gun. On cross-examination, Smith testified that he was nervous when he first spoke to the police and did not mention a gun, but rather told police that Kirk "pointed — something at me." Smith later told police that Kirk brandished a gun. When defense counsel later asked Smith if he told police that Kirk probably had a gun, Smith responded:

---

[3] OCGA § 16-8-41 (a).

[4] (Footnote omitted; emphasis in original.) *Durham v. State,* 259 Ga. App. 829, 831 (578 SE2d 514) (2003).

[5] (Citations omitted; emphasis in original.) *Wynn v. State,* 228 Ga. App. 124, 125 (1) (491 SE2d 149) (1997). See, e.g., *Kemper v. State,* 251 Ga. App. 665 (1) (555 SE2d 40) (2001) (armed robbery conviction affirmed where evidence showed that use of gun preceded taking); *Hudson v. State,* 234 Ga. App. 895, 897 (1) (a) (508 SE2d 682) (1998) (armed robbery conviction affirmed where theft was completed after force was used); *Lowery v. State,* 209 Ga. App. 5, 6 (1) (432 SE2d 576) (1993) (armed robbery conviction affirmed where "brief passage of time between the shooting [of victim] and the taking [of her money did] not sever [the] connection between the two acts"). Cf. *Hicks v. State,* 232 Ga. 393, 403 (207 SE2d 30) (1974) (armed robbery conviction reversed where taking occurred while victim was still asleep).

I at the time was still upset about what had happened. And [the officer] asked me did [Kirk] have a gun and I said it looked like it. [The officer said], well, you need to make sure. And I guess after a period of time of sitting there that, yes, because my reaction when I first saw it, when I first turned to my left.

When defense counsel asked Smith if he thought he saw a gun in the dark laundry room, Smith stated: "I saw something black and shiny and the way it was pointing at me to the side, yes, ma'am." Contrary to Kirk's argument, any inconsistencies or fluctuations in Smith's testimony were matters for the jury to resolve as they speak to the credibility of the witness and to the weight of the evidence, not to its admissibility. There was sufficient evidence for the jury to infer that Kirk pointed a gun at Smith during the robbery.

Moreover, the evidence was sufficient for the jury to infer that Kirk took the coin bag from Smith's presence *after* he threatened Smith with a gun.[6] The trial court did not err in denying the motion for directed verdict on the armed robbery charge.

(b) Relying on the same arguments asserted in Division 1 (a), Kirk contends that the evidence was insufficient to support his convictions for aggravated assault and armed robbery. We disagree.

In light of our holding in Division 1 (a), we need not address Kirk's challenge to the armed robbery conviction.

With regard to the aggravated assault, the indictment charged that Kirk "did unlawfully commit an assault upon the person of Willie Smith, by sticking a gun to the head of the victim, all with intent to rob Willie Smith." To be convicted of aggravated assault, the evidence must show that the defendant assaulted: "(1) With intent to murder, to rape, or to rob; [or] (2) [w]ith a deadly weapon or with any object, device, or instrument which, when used offensively against a person, is likely to or actually does result in serious bodily injury."[7] The evidence summarized in Division 1 (a) coupled with Smith's testimony that he was scared and tried to cover his head with his forearms so that Kirk would not shoot him in the head was sufficient to permit the jury to conclude that Kirk assaulted Smith with the intent to rob him.

2. Kirk next contends the trial court erred in overruling his objection to a portion of the state's closing argument. We disagree.

---

[6] See, e.g., *Ramey v. State*, 206 Ga. App. 308, 308-309 (425 SE2d 385) (1992) (armed robbery conviction affirmed where evidence showed that defendant attacked victim with a knife before stealing her car).

[7] OCGA § 16-5-21 (a).

During closing arguments, the state made the following statement: "I submit to you that if the defendant is given another opportunity to commit an armed robbery, he will get it and he will take it, and maybe he'll hurt someone next time. Because if he shot Willie Smith we wouldn't be here. . . . It would be a murder case." Kirk did not object to the statement.

> The time to object to improper closing argument is when the impropriety occurs at trial, when the trial judge may take remedial action to cure any possible error. When no timely objection is interposed, the test for reversible error is not simply whether or not the argument is objectionable, or even if it might have contributed to the verdict; the test is whether the improper argument in reasonable probability changed the result of the trial.[8]

Even if these remarks could be construed as improper, given the evidence in this case, there is not a reasonable probability that it changed the result of the trial.[9]

3. We agree, as does the state, with Kirk's contention that his aggravated assault conviction should have merged with his armed robbery conviction. Because the two convictions were based on the same conduct (sticking a gun to Smith's head with the intent to rob him), the aggravated assault conviction merged with the armed robbery conviction.[10] Accordingly, the aggravated assault conviction is vacated.

4. Lastly, Kirk contends that the trial court erred in failing to give his requested charge that the force used to commit the robbery must be contemporaneous with the taking. He argues that the charge should have been given because there was evidence that he did not brandish the gun contemporaneously with the taking of the coin bag. We do not agree.

The record shows that the trial court gave the pattern charge on armed robbery. As this charge covers the principle of law in the requested charge, there was no error. "A trial court is not required to instruct the jury in the exact language of a requested charge, and when the principle of law is covered in another charge, that is

---

[8] (Citation and punctuation omitted.) *Jenkins v. State*, 235 Ga. App. 547-548 (1) (510 SE2d 87) (1998).

[9] See, e.g., *Cherry v. State*, 230 Ga. App. 443, 447 (5) (496 SE2d 764) (1998). Cf. *Williams v. State*, 261 Ga. App. 511, 515-518 (3) (583 SE2d 172) (2003) (convictions reversed on ineffective assistance grounds where prosecutor's statements about defendant's future dangerousness were not mere hints, but formed the "theme of the prosecutor's closing argument," evidence of defendant's guilt was not overwhelming, and counsel failed to object).

[10] See, e.g., *King v. State*, 241 Ga. App. 894, 895 (1) (528 SE2d 535) (2000).

sufficient."[11] However, even if the trial court erred in failing to give Kirk's requested charge, any error in failing to do so was harmless in light of the evidence and our ruling in Division 1 (a).[12]

*Judgment affirmed as to Counts 1 and 5. Judgment and sentence vacated as to Count 2. Blackburn, P. J., and Barnes, J., concur.*

## DECIDED FEBRUARY 15, 2005.

*Cynthia W. Harrison*, for appellant.

*Paul L. Howard, Jr., District Attorney, Bettieanne C. Hart, Assistant District Attorney*, for appellee.

---

[11] (Punctuation and footnote omitted.) *Brown v. State*, 268 Ga. App. 24, 28 (3) (b) (601 SE2d 405) (2004).

[12] See *Woodard v. State*, 278 Ga. 827, 830 (4) (607 SE2d 592) (2005) ("[A]n error is harmless if it is highly probable that the error did not contribute to the jury's verdict.") (citation and punctuation omitted).