A10A0742. BARBER v. THE STATE.
(696 SE2d 433)

DOYLE, Judge.

Following a jury trial, Michael K. Barber was convicted of three counts of armed robbery (OCGA § 16-8-41 (a)).[1] He appeals, challenging the sufficiency of the evidence, and we affirm.

> On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict and an appellant no longer enjoys the presumption of innocence. This Court determines whether the evidence is sufficient under the standard of *Jackson v. Virginia*,[2] and does not weigh the evidence or determine witness credibility. Any conflicts or inconsistencies in the evidence are for the jury to resolve. As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, we must uphold the jury's verdict.[3]

So viewed, the evidence shows that on July 29, 2004, Bruce Varner approached Barber in a stolen car. Barber asked if Varner "kn[e]w where [they] could get some money," and Varner replied, "No." Barber got into the vehicle, and the two men drove toward an apartment complex, where they saw several men sitting down outside an apartment. Barber told Varner to pull over, and Varner complied, backing the car into a parking spot.[4] Barber then gave Varner a gun, and both men exited the vehicle and approached the

---

[1] Barber was charged with armed robbery (Counts 1-3), aggravated assault with intent to rob (Counts 4-6), aggravated assault with a deadly weapon (Count 7), burglary (Count 8), possession of a firearm during the commission of a felony (Count 9), and possession of a firearm by a convicted felon (Count 10). Count 7 was withdrawn from the jury's consideration and ultimately quashed. The jury found Barber guilty of the remaining nine counts of the indictment. The trial court later vacated Count 9. Barber was sentenced to prison for Counts 1-3, 8, and 10 (the trial court merged the aggravated assault with intent to rob charges into the armed robbery charges). Thereafter, the trial court granted Barber's motion for new trial as to Counts 8 and 10. Thus, the only remaining charges for purposes of this appeal are armed robbery (Counts 1-3).

[2] 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

[3] (Citations omitted.) *Rankin v. State*, 278 Ga. 704, 705 (606 SE2d 269) (2004).

[4] Varner testified that he backed into the parking spot "[s]o when we took their money or whatever[,] we could . . . pull on out."

men. Barber stated, "You know what time it is," and Varner, who was holding the gun, grabbed the back of one of the men's pants, while Barber collected their wallets.

Tyrone Williams, Jr., who employed the victims on a cleaning crew, witnessed the incident. Williams testified that he saw the driver exit the car, which he left running, and walk around to the passenger side, where Barber handed him a gun. When Williams saw the gun, he backed into the apartment they were cleaning and watched as Barber took the wallets from the victims. Williams then flagged down police, who were already on the apartment complex property making another arrest, and reported the robbery. The police officers approached the scene and saw two men, one of whom was Barber, standing in front of the victims, who had their hands in the air. Barber made eye contact with one of the officers and fled on foot, after warning Varner. The officers initially chased after Barber, but then called dispatch for assistance, giving them a description of the two men and their direction of travel. The police were unable to apprehend Barber at the scene, but they did catch Varner, who identified Barber as his co-perpetrator and ultimately led police to Barber's home.

The same afternoon, Barber broke into a townhouse in a complex on the same street as the complex where the robbery occurred. Joel Price, who was 14 years old at the time of trial, testified that Barber broke down the locked door of his unit. Price testified that when Barber saw him, Barber stated that "he was running from the cops. He gave me a story about, [how] he beat his girlfriend, something like that, he and his home boy. So he said he wasn't going to hurt me or nothing like that. . . . He was just on the phone . . . talking to somebody, I guess." Barber asked Price for some clothes, and he changed and then left approximately an hour and a half later. Price identified Barber both at trial and in a photographic lineup.

Although Williams was not able to identify either assailant from a photographic lineup, he identified Barber at trial as the passenger who took the victims' wallets. One of the victims also identified Barber at trial as the passenger of the car who collected the victims' wallets from their pockets.

Barber contends that the evidence was insufficient to support his conviction for armed robbery, arguing that there was no evidence that he used an offensive weapon to take the victims' property. This argument provides no basis for reversal.

"A person commits the offense of armed robbery when, with intent to commit theft, he or she takes property of another from the person or the immediate presence of another by use of an offensive

weapon. . . ."[5] "Even though [Barber] did not actually use a weapon here, [Varner's] use of a weapon can be attributed to him because one who intentionally aids or abets the commission of a crime by another is a party to the crime and equally guilty with the principal."[6] Here, Barber aided and abetted Varner by telling him to pull into the apartment complex after they saw the potential victims, giving Varner his gun, and then taking the victims' wallets from them while Varner pointed the gun at them.[7]

Barber also argues that even if there is evidence that Varner pointed the gun at one of the victims, there is no evidence that Varner pointed a weapon at the other two victims or that they feared personal injury while Barber purportedly took their wallets. We find this argument unpersuasive. Given the evidence that Barber collected the three victims' wallets while Varner brandished a handgun, even if he only pointed it directly at one of them, a rational juror could have found the essential elements of the crime beyond a reasonable doubt.

Finally, Barber's argument that Varner's testimony was not credible is unavailing. "[I]t is the role of the jury, and not this Court, to resolve evidence conflicts and inconsistencies and to assess witness credibility."[8]

The evidence was sufficient to enable the jury to find Barber guilty beyond a reasonable doubt of the crimes for which he was convicted.

*Judgment affirmed. Andrews, P. J., and Ellington, J., concur.*

DECIDED JUNE 17, 2010.

*Sheueli C. Yang*, for appellant.
*Paul L. Howard, Jr., District Attorney, Marc A. Mallon, Assistant District Attorney*, for appellee.

---

[5] OCGA § 16-8-41 (a).

[6] *Robinson v. State*, 246 Ga. App. 576, 577-578 (1) (541 SE2d 660) (2000). See OCGA § 16-2-20 (b) (3).

[7] See *Mason v. State*, 262 Ga. App. 383 (1) (585 SE2d 673) (2003) (affirming armed robbery conviction even though the defendant was not armed because the defendant aided and abetted his armed co-defendants in robbing the victim); *Robinson*, 246 Ga. App. at 578 (1); *Hudson v. State*, 234 Ga. App. 895, 898 (1) (c) (508 SE2d 682) (1998) (defendant could have been properly convicted of armed robbery even if he was unarmed because he willingly participated in the robbery along with his armed co-defendant); *Dowdy v. State*, 209 Ga. App. 95, 96 (1) (432 SE2d 827) (1993) (defendant was properly convicted of armed robbery as a party to the crime because he retrieved the money the victim threw down while held at gunpoint by the co-defendant).

[8] *Lawton v. State*, 281 Ga. 459, 463 (4) (640 SE2d 14) (2007).