A97A1190. ODIM v. THE STATE.
(491 SE2d 218)

ANDREWS, Chief Judge.

Torri Lavell Odim appeals from his conviction of armed robbery, burglary,[1] and possession of a firearm during the commission of a felony, all resulting from a home invasion.

1. Viewed with all inferences in favor of the jury's verdict, the evidence was that, on December 21, 1994, Watts and Vasser, an acquaintance of Watts, were in Watts' apartment when both doors were kicked in and six armed men entered. Watts, who was in his kitchen, recognized co-defendant Fortune from the neighborhood and saw Odim and Pryer come in behind Fortune. Watts' 17-year-old daughter Spears was in the bedroom with her 12-year-old sister and heard the entry. Spears stepped into the hall and saw Fortune, along with Odim and Pryer. Spears then locked herself and her sister in the bedroom, they climbed out the window, and Spears called the police. Because she was so upset, she nearly passed out after calling the police.

Responding to the call, Officer Barge saw a light-colored car leaving the apartment complex and radioed this information to other officers in the area. Barge found Watts and Vasser[2] very excited and upset when he arrived. Spears and her sister, also agitated, returned to the apartment and all four victims began attempting to describe the assailants to Barge. The four described sports team jackets being worn by the robbers, including a Bengals jacket, an aqua and purple jacket, and maybe a Bulls jacket. During this description, Barge heard over his walkie-talkie that Sgt. McBurnett had spotted and stopped a car matching Barge's description of the car seen leaving

[1] Odim was convicted of three counts of burglary which merged.
[2] Vasser did not testify at the trial.

the apartments.

When McBurnett spotted the white Riviera and checked the license plate, he discovered the plate was registered to another car. After turning on his blue lights to stop the car for this violation, McBurnett saw a lot of activity in the car, which finally pulled over. There were six men in the car and one ran, taking something with him, before McBurnett could get them all in custody. Officer Barge then brought Vasser and Spears to this location and both identified these five men as the robbers and Spears called co-defendant Fortune by name. Watts had stayed at his apartment with his younger daughter during this time because she was so upset, but he went to the police station around 1:00 a.m. The five men were being processed and Watts viewed them there, identifying them as the robbers.

A Bengals jacket was found in the Riviera, along with a green jacket with red, blue and brown trim. Also found in the rear floorboard was a .9 mm handgun, fully loaded and cocked, and a crumpled fifty dollar bill. Four hundred dollars had been taken from Watts in the robbery.

Spears testified at trial that, while she did not know Odim's name, she knew him by face because she had seen him around before.

Two co-defendants, McDowell and Hodges, testified that Odim participated in the robbery.

Odim testified that he had paid McDowell for a ride home from his job and, while he was in the apartment complex helping McDowell get some drugs, he did not participate in the robbery but was visiting with some guys from the area when it occurred.

The issue of which version of these events to believe was for the jury, which resolved the credibility issues in favor of the State. OCGA § 24-9-80. This court will not weigh the evidence or determine witness credibility, but only determines the sufficiency of the evidence. *Daras v. State*, 201 Ga. App. 512 (1) (411 SE2d 367) (1991). The evidence was sufficient. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Odim's first enumeration is that the court erred in denying his motion to suppress the pre-trial identifications by Spears and Watts, based on *State v. Frye*, 205 Ga. App. 508 (2) (422 SE2d 915) (1992) and *Daniel v. State*, 150 Ga. App. 798, 799 (1) (258 SE2d 604) (1979).

"A two-part test is used to determine whether identification evidence should be excluded. 'The threshold inquiry is whether the identification procedure was impermissibly suggestive. Only if it was need the court consider the second question: whether there was a very substantial likelihood of irreparable misidentification. (Cit.)' *Gravitt v. State*, 239 Ga. 709, 710 (4) (239 SE2d 149) (1977)." *Frye*, supra.

Pretermitting the fact that neither identification here was the

"one-on-one" showup that is the focus of most such inquiries, see *Daniel,* supra, but involved a group of five men of the same race and general age group, arguably making the showups not impermissibly suggestive, we consider the second question. See *Clempson v. State,* 144 Ga. App. 625 (1) (241 SE2d 495) (1978).

" ' "This court has thoroughly considered the dangers inherent in the practice of bringing single suspects to confront witnesses for the purpose of pre-trial identification, in particular, the danger of the ' "substantial likelihood of irreparable misidentification." (Cit.)' (Cit.) To evaluate that likelihood, we apply the test enunciated in *Neil v. Biggers,* 409 U. S. 188 (93 SC 375, 34 LE2d 401) ((1972)) which requires that we consider the witnesses' opportunity to view the suspect at the time of the offense, the witnesses' degree of attention, the accuracy of the witnesses' prior description and their level of certainty. However, both state and federal courts have also recognized consistently those countervailing considerations which may render the one-on-one confrontation permissible if not desirable. These include the necessity . . . to resolve promptly any doubts as to identification so as to enhance the accuracy and reliability of the identification, thus expediting the release of innocent subjects. (Cits.)" ' *Simmons v. State,* 209 Ga. App. 21, 22 (2) (432 SE2d 623) (1993)." *Sabo v. State,* 226 Ga. App. 106, 107 (2) (485 SE2d 591) (1997).

Here, Spears saw Odim standing within ten feet of her in the short, lighted hallway outside the doorway of the bedroom. Although she could not recall his name, she recognized his face from seeing him around the neighborhood. The showup after the stop of the car occurred within 15 minutes of Officer Barge's arrival on the scene of the robbery, which was within minutes of its occurrence. Spears was intently focused on the men in the apartment because she believed her father's life was in danger. While Spears, Watts and Vasser's initial descriptions of the men were somewhat jumbled, the description of the clothing worn was much more specific. See *Nicholson v. State,* 265 Ga. 711, 713 (2) (462 SE2d 144) (1995). Spears' identification of Odim was properly admitted. Id.; *Sabo,* supra.

Watts' visit to the jail around 1:00 a.m., within a few hours of the robbery, during which he also viewed the five men, was also properly admitted. Watts knew co-defendant Fortune and saw him come in one door, followed by Odim, who pointed a pistol at Watts. The robbery lasted five to seven minutes, during which Watts focused on the four men he could see, including Odim. There was no error in admitting his identification. *Sabo,* supra; *Simmons,* supra at 22 (2).

3. The third enumeration complains of the court's charge on both parties to the crime and conspiracy, because Odim was not accused of conspiracy and such a charge was duplicative of that on parties to the crime.

"A conspiracy may be proven and a jury charge may be given on conspiracy, even though a defendant is not indicted under that theory. [Cit.]" *Williams v. State*, 267 Ga. 308, 309 (2) (477 SE2d 570) (1996).

Also, charging on both conspiracy and parties to the crime is not error. *Alexander v. State*, 186 Ga. App. 787, 789 (2) (368 SE2d 550) (1988).

4. Finally, Odim contends that his trial counsel rendered ineffective assistance and denial of his motion for new trial on this ground was error.

"A trial court's finding that a defendant has been afforded effective assistance of counsel must be upheld unless that finding is clearly erroneous. [Cit.]" *Garrett v. State*, 196 Ga. App. 872, 874 (1) (397 SE2d 205) (1990). A conviction will not be reversed on the basis of ineffective assistance of counsel unless "counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Carter v. State*, 176 Ga. App. 632, 633 (337 SE2d 413) (1985), quoting from *Strickland v. Washington*, 466 U. S. 668, 669 (104 SC 2052, 80 LE2d 674) (1984).

Odim contends that his trial counsel was ineffective for failing to use a felony conviction to impeach co-defendant McDowell when he testified, failing to use Detective Douglas' supplemental report to impeach Watts and Spears, failing to call witnesses from the preliminary hearing to show that Watts did not identify Odim at that hearing,[3] and failing to introduce a picture of Odim showing that he had gold teeth which were not mentioned by the witnesses in their descriptions to police.

Trial counsel testified at the motion for new trial hearing and explained his strategic reasoning for these decisions, except for McDowell's felony conviction, which counsel acknowledged that he had forgotten.

With the exception of forgetting McDowell's conviction, although appellate counsel may disagree with the decisions made, and while they may have been wise or unwise, they do not equate with ineffective assistance of counsel. *Luallen v. State*, 266 Ga. 174, 177 (3) (b) (465 SE2d 672) (1996); *Hammond v. State*, 264 Ga. 879, 882 (4) (452 SE2d 745) (1995); *Riser v. State*, 222 Ga. App. 348, 349 (474 SE2d 632) (1996); *Williams v. State*, 218 Ga. App. 785, 788 (3) (463 SE2d 372) (1995).

Regarding the failure to use McDowell's felony conviction, we

---

[3] Trial counsel did not represent Odim at the preliminary hearing, but did have the audiotape from that hearing transcribed to the extent possible, portions of it being inaudible.

conclude, as did the trial court, that there is no reasonable possibility that, but for counsel's unprofessional error, the result of the proceeding would have been different. *Mathis v. State*, 224 Ga. App. 521, 523 (2) (481 SE2d 256) (1997). McDowell testified that he was going to plead guilty to a felony, theft by receiving the stolen car driven that night, and acknowledged on cross-examination that he was also charged with a second felony, possession of cocaine.

*Judgment affirmed. Ruffin and Eldridge, JJ., concur.*

DECIDED AUGUST 15, 1997.

*Rubin, Winter, Rapoport & Hall, Robert G. Rubin*, for appellant.
*Paul L. Howard, Jr.*, District Attorney, *Elizabeth W. Morn, Charles E. Rooks, Carl P. Greenberg*, Assistant District Attorneys, for appellee.