## A98A0543. OLIVER v. THE STATE.
(503 SE2d 28)

BEASLEY, Judge.

Arlene Oliver was indicted for armed robbery (OCGA § 16-8-41), possession of a knife during commission of a crime (OCGA § 16-11-106), and giving a false name and date of birth to a law enforcement officer (OCGA § 16-10-25). The latter charge was nolle prossed. The jury found her guilty of armed robbery but mentally ill and acquitted her of the knife charge.

"On appeal the evidence must be viewed in a light most favorable to the verdict, and appellant no longer enjoys a presumption of innocence; moreover, on appeal this court determines evidence sufficiency, and does not weigh the evidence or determine witness credibility. [Cits.]"[1]

So viewed, the evidence shows that while 70-year-old Carolyn Ussery was carrying groceries to her car after shopping, Oliver approached from behind, grabbed Mrs. Ussery and demanded her purse. Initially Mrs. Ussery resisted and during the struggle her purse slipped off her shoulder and down to the ground. She looked

---

[1] *Grant v. State*, 195 Ga. App. 463, 464 (393 SE2d 737) (1990); see also *Jackson v. Virginia*, 443 U. S. 307, 319 (99 SC 2781, 61 LE2d 560) (1979).

down and saw Oliver holding a knife in her rib cage "and went limp." After Oliver took the purse and fled, Mrs. Ussery discovered a severe laceration on her finger.

1. Oliver contends the court erred in refusing to grant her motion for directed verdict for armed robbery because "there was no evidence that Ms. Oliver used the knife to effectuate the taking of the victim's purse." She argues that the victim's statement to police and trial testimony were inconsistent in that her statement did not show the knife was used during the robbery whereas her trial testimony did.

A directed verdict of acquittal is authorized only where "there is no conflict in the evidence and the evidence introduced with all reasonable deductions and inferences therefrom shall demand a verdict of acquittal. . . ."[2] The standard of review for denial of a motion for such a verdict and for reviewing sufficiency of evidence to support a conviction is the same:[3] whether, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."[4]

Armed robbery occurs "when, with intent to commit theft, [a person] takes property of another from the person or the immediate presence of another by use of an offensive weapon, or any replica, article, or device having the appearance of such weapon."[5] The offensive weapon must be used "as a concomitant to a taking which involves the use of actual force or intimidation (constructive force) against another person"[6] which must "either precede or be contemporaneous with, and not subsequent to, the taking."[7] "The question is whether the defendant's acts created a 'reasonable apprehension on the part of the victim that an offensive weapon was being used.' "[8] The element of "use" is present when the victim is aware of the weapon and it has the desired forceful effect of assisting to accomplish the robbery.[9] A weapon, including a concealed weapon, "may be

---

[2] OCGA § 17-9-1 (a).

[3] *Garrett v. State*, 184 Ga. App. 715, 716 (3) (362 SE2d 423) (1987), citing *Humphrey v. State*, 252 Ga. 525, 527 (1) (314 SE2d 436) (1984).

[4] *Jackson v. Virginia*, supra; *Adams v. State*, 255 Ga. 356, 357 (338 SE2d 860) (1986).

[5] OCGA § 16-8-41.

[6] *Hicks v. State*, 232 Ga. 393, 403 (207 SE2d 30) (1974).

[7] (Punctuation omitted.) *Lowery v. State*, 209 Ga. App. 5, 6 (1) (432 SE2d 576) (1993), quoting *Young v. State*, 251 Ga. 153, 157 (303 SE2d 431) (1983); *Wynn v. State*, 228 Ga. App. 124, 125-126 (1) (491 SE2d 149) (1997) (armed robbery upheld when theft of the van came after victim threatened with screwdriver); compare *Hicks v. State*, supra, 232 Ga. at 403 (holding that defendant was not guilty of armed robbery when his theft of victim's property preceded any show of force).

[8] *Johnson v. State*, 195 Ga. App. 56, 57 (1) (a) (392 SE2d 280) (1990), quoting *Moody v. State*, 258 Ga. 818, 820 (1) (375 SE2d 30) (1989).

[9] See *Maddox v. State*, 174 Ga. App. 728, 729-730 (1) (330 SE2d 911) (1985).

used in a taking as an instrument of constructive force to intimidate the victim by placing her in fear of personal injury. [Cit.]"[10]

In both Mrs. Ussery's statement to police and during her testimony she related that she saw the knife before the purse was taken. Her testimony differs only in that she said the knife was in her rib cage and when she saw it she went limp. Oliver herself told one of the detectives that she used the knife because she thought it would make the victim cooperate. She also told a doctor she used a knife.

The armed robbery conviction stands because "the evidence is sufficient to authorize a finding that the theft was completed after force was employed against the victim."[11]

2. Failure to give three of Oliver's proposed jury instructions is enumerated as error.

Each asserted error must be set out as a separate enumerated error. OCGA § 5-6-40. "When an appellant argues more than one error within a single enumeration, this court in its discretion may elect to review none of the errors so enumerated in violation of OCGA § 5-6-40 or elect to review any one or more of the several assertions of error contained within the single enumeration and treat the remaining assertions of error therein as abandoned." (Citation omitted.) *Robinson v. State*, 200 Ga. App. 515, 518 (2) (b) (408 SE2d 820) (1991). Despite the inept format which deviates from the law prescribing organization of a brief we will address each subpart of the enumeration.

"On the trial of all cases it is the duty of the judge to charge the jury the principles of law applicable to all issues raised by the pleadings and the evidence, even without a request for such an instruction. [Cits.]"[12]

The first instance is the court's refusal to charge on robbery and on theft by taking, as lesser included offenses of armed robbery. Oliver contends that other than insanity her sole defense is that although she had a knife in her hand when she took Ussery's purse, she did not use it to commit the robbery.

The rule regarding a charge on a lesser included offense is that "a written request . . . must always be given if there is any evidence that the defendant is guilty of the lesser included offense."[13] Such a charge is not required where the uncontradicted evidence shows completion of armed robbery.[14]

---

[10] *Ramey v. State*, 206 Ga. App. 308, 309 (425 SE2d 385) (1992).

[11] *Francis v. State*, 266 Ga. 69, 70 (463 SE2d 859) (1995).

[12] *Claxton v. Claxton*, 214 Ga. 715, 719 (2) (107 SE2d 320) (1959). Accord *Clarke v. Cotton*, 263 Ga. 861, 862 (440 SE2d 165) (1994).

[13] *State v. Alvarado*, 260 Ga. 563, 564 (397 SE2d 550) (1990).

[14] *Kirkland v. State*, 173 Ga. App. 687 (327 SE2d 808) (1985); *Mallory v. State*, 166 Ga. App. 812 (2) (305 SE2d 656) (1983).

*Holland v. State*[15] analyzed the question of charging a lesser included offense and affirmed rejection of a charge of simple possession. Where the body of evidence would factually support a legal alternative crime of which defendant could be guilty, a charge on the lesser included offense is required. But that is only when that body of evidence includes countervailing evidence of the lesser included offense. There was no evidentiary alternative as to whether Holland grew or manufactured marijuana: either he did or he did not.

*State v. Alvarado*[16] involved an evidentiary alternative which necessitated the lesser included charge. The evidence presented an issue of fact as to whether the defendant actually or constructively possessed cocaine. "At the time of the charge against him conviction of the offense of trafficking required proof of actual, as opposed to constructive, possession."[17] Actual possession justified a charge on trafficking. Constructive possession justified a charge on possession.[18]

There is no evidentiary alternative in Oliver's case. Mrs. Ussery's statement to police, the version of the facts upon which Oliver relies, shows that Ussery saw the knife before Oliver took the purse. The show of force preceded the taking,[19] Mrs. Ussery had a reasonable apprehension the knife was being used,[20] she saw it, and the knife was a concomitant to the taking.[21] There was no alternative crime to armed robbery based on the evidence most favorable to Oliver. As in *Hopkins v. State*,[22] "[n]o evidence was presented that the robbery was committed without the use of a [weapon]." The uncontradicted evidence "showed completion of the offense of armed robbery."[23] The same reasoning holds true for robbery and theft by taking.[24]

The fact that Oliver was acquitted of possession of a knife during the commission of a crime does not compel a different conclusion. Since Georgia abandoned the inconsistent verdict rule in criminal cases,[25] the jury is free to compromise on the verdict.[26]

---

[15] 205 Ga. App. 695, 696-698 (5) (423 SE2d 694) (1992).

[16] Supra, 260 Ga. 563.

[17] Id.

[18] Id.

[19] *Lowery v. State*, supra, 209 Ga. App. at 6 (1).

[20] *Johnson v. State*, 195 Ga. App. at 57 (1) (a).

[21] *Hicks v. State*, supra, 232 Ga. at 403. See also *Maddox v. State*, 174 Ga. App. at 729-730 (1) (pointing the gun at victim not required to show armed robbery).

[22] 227 Ga. App. 567 (489 SE2d 368) (1997).

[23] *Kirkland v. State*, 173 Ga. App. at 687 (2). See also *Mallory v. State*, supra, 166 Ga. App. at 814 (2) (all the evidence proved the greater offense of armed robbery).

[24] *Sims v. State*, 197 Ga. App. 214, 217 (5) (398 SE2d 244) (1990).

[25] *Milam v. State*, 255 Ga. 560, 562 (2) (341 SE2d 216) (1986).

[26] *Travitt v. State*, 228 Ga. App. 711 (492 SE2d 574) (1997); see *Dumas v. State*, 266 Ga.

The second instance is the omission of the charge: "In an armed robbery case, the State must prove beyond a reasonable doubt that the taking was accomplished by concomitant use of an offensive weapon. Therefore, where a weapon, although present, was not used to take the victim's property, an armed robbery has not been perpetrated." Oliver cites *Dixon v. Hopper*.[27]

The court charged in the words of the armed robbery statute and added: "An offensive weapon is any object, device, or instrument which, when used offensively against a person, is likely to, or gives the appearance of being likely to, or actually does result in death or serious bodily injury. The character of a weapon may be established by direct or circumstantial evidence."

The full bench decision in *Studdard v. State*[28] quotes from the Supreme Court of Georgia opinion in *Hicks v. State* which explains the term "use of an offensive weapon" as "concomitant" to a taking.[29] "The language of the Code section 'clearly contemplates that the offensive weapon be used as a concomitant. . . .' "[30] The language of the statute itself, quoted in the charge as given, is sufficient to convey this meaning.[31]

*Dixon v. Hopper* is not on point because Dixon's victim never saw a weapon.[32]

3. (a) Oliver contends her statement to police after her arrest should have been suppressed because it resulted from an illegal stop. A witness to the robbery recorded the license number of the getaway car and gave it to police. Two days later, an officer stopped the same car driven by Oliver in what the trial court found was an illegal stop. Oliver gave a false name and date of birth to the officer, and he discovered two knives during the subsequent car search. He was about to let Oliver go when he decided to check her license plate number through the Georgia and National Crime Information Centers (GCIC and NCIC). It erroneously showed the car was stolen. The officer arrested Oliver for theft by receiving. It was later determined that the car was not stolen but that Oliver was wanted for armed robbery. At the station, after waiving her *Miranda* rights, Oliver confessed to the crime and indicated intentional use of the knife. The statement

---

797, 799 (2) (471 SE2d 508) (1996) ("it is not generally within the trial court's power to make inquiries into the jury's deliberations, or to speculate about the reasons for any inconsistency between guilty and not guilty verdicts").

[27] 407 FSupp. 58, 64 (M.D. Ga. 1976), overruled on other grounds, *Jarrell v. Balkcom*, 735 F2d 1242 (11th Cir. 1984).

[28] 185 Ga. App. 319, 320-321 (2) (363 SE2d 837) (1987).

[29] *Hicks v. State*, supra, 232 Ga. at 403.

[30] *Studdard v. State*, 185 Ga. App. at 320-321 (2), quoting *Hicks v. State*, 232 Ga. at 403.

[31] *Studdard v. State*, supra.

[32] Id. 407 FSupp. at 64.

was read into evidence at trial by the detective who recorded it.

*Ruffin v. State* focuses on "the issue whether a valid outstanding arrest warrant which is discovered in the course of a routine check during an unlawful Terry stop sufficiently attenuates the connection between the illegal stop and a subsequent search incident to an arrest pursuant to the warrant so as to render contraband found in that search admissible into evidence."[33] The court reasoned that "discovery of the valid outstanding warrant attenuated the connection between the illegal stop and the search that revealed the evidence within the meaning of *Wong Sun*[ *v. United States*,[34]] thereby rendering that evidence admissible. To hold otherwise would effectively render the outstanding warrant invalid because of police conduct unrelated to its issuance, and would immunize appellant from arrest for past conduct already properly determined to constitute probable cause for [her] arrest. . . . Since the warrant was valid, appellant's arrest pursuant thereto was lawful, and [she] was lawfully searched incident to that arrest."[35] "[E]ven if evidence would not have been discovered but for the illegal police conduct, if the derivative evidence has only an attenuated link to the illegality, it need not be suppressed."[36]

Oliver was arrested as a result of information that the car was stolen, not as a result of the illegal stop. The fact that the information was inaccurate and the issue of whether an arrest based on such information is valid was neither argued in appellant's brief nor supported by citation of authority and therefore poses no question for our resolution.[37]

As for Oliver's argument, for the same reasons given in *Ruffin,* the arrest based on the stolen car report sufficiently attenuates the connection between the illegal stop and the subsequent confession to permit admittance of the evidence.

(b) Oliver also contends her statement should have been suppressed because her psychosis prevented her from voluntarily, knowingly and intelligently waiving her *Miranda* rights.

"A mere showing that a person who confessed to a crime may have suffered from some mental disability is not a sufficient basis on

[33] 201 Ga. App. 792, 794 (2) (a) (412 SE2d 850) (1991).

[34] 371 U. S. 471, 487-488 (III) (83 SC 407, 9 LE2d 441) (1963).

[35] Id. at 794-795 (2) (a).

[36] Id. at 793 (2) (a).

[37] Court of Appeals Rule 27 (c) (2). *Bragg v. State*, 226 Ga. App. 588 (1) (487 SE2d 137) (1997). Compare *Harvey v. State*, 266 Ga. 671, 673 (469 SE2d 176) (1996) (material inquiry is whether facts within officer's knowledge at time of arrest constituted reasonably trustworthy information sufficient to authorize prudent person to believe defendant committed an offense); *Paxton v. State*, 160 Ga. App. 19 (285 SE2d 741) (1981) (" 'NCIC printouts [regarding stolen car] are reliable enough to form the basis of the reasonable belief which is needed to establish probable cause for arrest.' [Cit.]").

which to exclude the statement. [Cits.] . . . The question of whether or not a defendant is capable or incapable of making a knowing and intelligent waiver of his rights is to be answered by the trial judge and will be accepted by appellate courts unless clearly erroneous. [Cits.]"[38] "Even highly disturbed and psychotic persons are capable of periods of understanding and lucidity."[39]

At the *Jackson-Denno* hearing, the court heard testimony from the detective who took Oliver's statement and from a defense psychiatrist. The detective testified that during the interview he was not in uniform, did not have a weapon on his person, did not threaten her and did not offer her anything in exchange for making a statement. He informed her of her *Miranda* rights, asked if she understood them and had her initial each one indicating she understood. Oliver did not ask any questions or convey she did not understand. She then signed the waiver of her rights indicating she was willing to make a statement. Thereafter, she spoke about the incident and the detective wrote what she said.

He also testified about Oliver's demeanor when she gave her statement. He said she was crying off and on but that while he was reading her rights she was attentive, coherent, and not apparently under the influence of drugs or alcohol; that during preliminary questioning her responses were appropriate and coherent; and that she expressed sorrow and remorse.

The defense psychiatrist who interviewed Oliver for two hours at the DeKalb County jail, and reviewed her medical records and other related materials, testified that Oliver suffered from moderate to severe recurrent major depression and has a history of auditory and visual hallucinations. In his opinion Oliver was psychotic, severely depressed and suffering hallucinations at the time she was interviewed by the detective and could not knowingly and intelligently waive her rights. He thought her condition might have prevented her from acting to protect herself in terms of waiving her rights at the time of her confession.

On cross-examination, the psychiatrist conceded he did not discuss with Oliver her interview with the police and she never told him she did not understand her rights. He did not ask her whether she was in fact suffering from hallucinations at the time of her statement. He did not know any of the circumstances surrounding Oliver giving her statement and he had not talked with the interrogating detective. He conceded that to the extent Oliver's statement showed her to be feeling guilty and remorseful, her feelings were consistent

---

[38] *Marlowe v. State*, 187 Ga. App. 255, 257 (370 SE2d 20) (1988).
[39] *Harris v. State*, 256 Ga. 350, 353 (4) (349 SE2d 374) (1986).

with those of a rational person. He acknowledged that Oliver is intelligent and educated.

The court stated, "I think the evidence shows that she did understand what was going on and made some intelligent decisions and asked some intelligent questions, more so than most I hear about in court. So I'm going to find from a preponderance of the evidence that she was advised of each of her Miranda rights, that she understood them and she voluntarily waived them, and that she thereafter gave her statement freely and voluntarily without any hope of benefit or fear of injury." This finding of fact and legal conclusion was not reversible error.

4. The last enumeration of error is the admittance of certain testimony regarding Oliver's demeanor in court and on several occasions out of court. There being three parts to this enumeration, it suffers from the same deficiency as noted in Division 2, supra. In this instance the multiplicity resulted in a mixed and overlapping presentation. We have chosen to address each contention as deciphered.

The first issue is whether the targeted testimony of Deputy Sheriff Locklear and Detective Blenk was an improper comment on Oliver's right to remain silent. Despite her several references to the transcript, no objection was made on this basis at trial. The references are to objections that testimony was leading or improper rebuttal or given by a witness not qualified as an expert or not relevant. None of these even remotely raise the issue now presented for scrutiny. It must be raised and ruled on; otherwise there is no decision of the trial court for us to determine was legally right or wrong.[40]

The second barrier to admissibility urged is that Deputy Sheriff Locklear's and Detective Blenk's testimony about Oliver's in-court demeanor was improper rebuttal evidence. It was improper, Oliver contends, because her primary defense was insanity at the time of the commission of the act and her evidence related only to that, not to her in-court demeanor or to her demeanor at various times after arrest.

Detective Blenk did not testify in rebuttal but only in the State's case-in-chief. As to Locklear, the State called her to rebut the testimony of defendant's expert witness concerning her demeanor when he interviewed her at the jail. The doctor had testified that her demeanor in the courtroom was consistent with her demeanor at the jail. His medical evaluation was based in part on his observation of her behavior at that time. Locklear's testimony showed her to be relatively normal in jail. It was proper rebuttal evidence as it was

---

[40] *Butler v. State*, 172 Ga. App. 405, 406-407 (1) (323 SE2d 628) (1984); *Velkey v. Grimes*, 214 Ga. 420, 421 (105 SE2d 224) (1958).

within the scope of defendant's evidence.[41]

The only objection made when Locklear was asked about Oliver's courtroom demeanor was that it was a leading question. There was no objection on the basis that this particular testimony would constitute improper rebuttal evidence. Thus, any objection to this evidence on that ground was waived.[42] Further yet, the Supreme Court of Georgia pointed out in a recent case that "Georgia law has long recognized the critical role a party's demeanor and appearance plays in a jury's consideration of a case," and the Court stated that "the demeanor at trial of a criminal defendant is of probative value with respect to the defense of insanity."[43] Witness Locklear's characterization of Oliver's in-court demeanor gave the jury a comparative context in which to measure her description of Oliver's behavior in jail, for the jury could judge the accuracy of the current characterization based on their own observation.

The final effort to show inadmissibility is directed to Oliver's demeanor in jail, which evidence Oliver contends improperly placed her character in issue. Again, no such objection was made in the trial court, so the point falls by the wayside. Moreover, it was Oliver and not the State who first presented evidence of her demeanor in jail. She elicited this information as a basis for Dr. Leader's opinion concerning her mental state and capacities. Thus she cannot complain when one of the State's witnesses addressed the same subject.

"The admission of evidence is discretionary with the trial court, and this court will not interfere with that court's ruling absent abuse." *Williams v. Terry*, 197 Ga. App. 209 (1) (398 SE2d 239) (1990). It is discretionary because the object of all legal investigation is the discovery of the truth, OCGA § 24-1-2, and were the decision to admit evidence rigidly confined, it would disserve the object sought to be achieved. Oliver's mental condition at the time of the encounter with Mrs. Ussery was a focus of dispute, and Oliver's circumstances thereafter, including her appearance and behavior at trial, shed light on her defense of insanity.

*Judgment affirmed. Pope, P. J., and Ruffin, J., concur.*

DECIDED MAY 27, 1998 —
RECONSIDERATION DENIED JUNE 10, 1998 —

*Davis, Zipperman, Kirschenbaum & Lotito, Seth D. Kirschenbaum, Paul A. Griffin,* for appellant.

*J. Tom Morgan, District Attorney, Barbara B. Conroy, Elisabeth*

[41] See *Hayes v. State*, 262 Ga. 881, 884 (3) (c) (426 SE2d 886) (1993).
[42] *Butler v. State*, supra.
[43] *Lawrence v. State*, 265 Ga. 310, 316 (3) (b) (454 SE2d 446) (1995).

*G. Macnamara, Carol M. Kayser, Assistant District Attorneys*, for appellee.