## A99A0298. ANDERSON v. THE STATE.
### (519 SE2d 463)

RUFFIN, Judge.

A jury found Charles Anderson guilty of ten counts of armed robbery, seven counts of aggravated assault, and two counts of kidnapping. Anderson appeals his conviction and the trial court's denial of his motion for new trial, asserting numerous grounds. We affirm.

1. Anderson argues that the evidence was not sufficient to support a conviction as to 11 of the counts against him. On appeal, Anderson no longer enjoys a presumption of innocence, and we view the evidence in the light most favorable to support the verdict. *Paul v. State*, 231 Ga. App. 528 (499 SE2d 914) (1998). Our review is limited to determining whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Williams v. State*, 233 Ga. App. 217 (1) (504 SE2d 53) (1998). We neither determine the credibility of witnesses nor evaluate the accuracy of eyewitness identifications. *Paul*, supra; *Hopkins v. State*, 222 Ga. App. 157 (473 SE2d 267) (1996).

The evidence showed that Anderson committed a series of robberies in the Buckhead area of Atlanta during a three-month period in the winter of 1994. On January 11, 1994, a large, African-American male with a light complexion who was wearing a brown jacket entered a Heavenly Ham store with a gun drawn and demanded money from Shawn Meade and Marilyn Fillingim, two employees behind the counter. When Meade explained that the money was in the back office, the man went with Meade and Fillingim to the office, where two more employees — Sara Hyatt and Lisa Hanrahan — were counting the day's receipts. The man took the money, ordered the four employees to sit down and wait ten minutes, and then left the store. Although Fillingim did not testify and Hyatt was unable to identify the man, both Meade and Hanrahan positively identified Anderson as the perpetrator and also identified his jacket and gun, which were introduced into evidence.[1] According to Hanra-

---

[1] The gun Anderson used in the string of robberies was a toy pistol. Nevertheless, the

han, Anderson was "very polite, as armed robbers go."

On January 21, 1994, an African-American male with a light skin tone wearing a brown jacket entered the Cup & Saucer gift shop, pointed his gun at customer Paul Cahoon, and demanded money from Cahoon and employee Teresa Hess. Cahoon gave the man — whom he described as "polite" — $65 from his wallet, and Hess handed him money from the cash register. The man then ordered Cahoon and Hess to the back of the store, told them to wait 15 minutes, and left. Although Hess did not testify at trial, Cahoon, who identified Anderson from a pre-trial lineup, testified that Anderson was the man who committed the robbery and that he recognized Anderson's jacket as the one he wore during the robbery.

On January 23, 1994, an African-American man wearing a blue jacket and knit cap approached Donald Waite with a gun while Waite was standing at a Bank South automatic teller machine and told him to withdraw $500. After Waite explained that he did not have that much money in his account, the man snatched the money Waite had already withdrawn from his hand, then ordered Waite to drive away without looking back. Although Waite could not positively identify Anderson in court, Waite's description of the robber and his clothing matched Anderson's appearance and clothing seized from Anderson's apartment. Waite also recognized Anderson's gun as the one used in the robbery. Finally, Waite described the robber's demeanor as initially polite and calm but growing more aggressive as the robbery progressed.

On January 26, 1994, a light-complected African-American male robbed cigarette vendor Bruce Hosch as he emerged from servicing the cigarette machines at a Buckhead bar. The robber pulled a gun on Hosch, ordered him to "give it up," grabbed two bags of money, and directed Hosch to get into his car and drive away. Hosch identified Anderson as the robber during a pre-trial photographic lineup and testified that he was "sure" of his identification.

On January 30, 1994, a tall, husky African-American male robbed Mason Shives at the same Bank South ATM where Donald Waite had been robbed a week earlier. After taking $110 from Shives, the robber asked Shives to withdraw another $100. Shives explained that he was a student and had no more money, after which the man returned some of Shives' money and told Shives to drive away and not look back. Shives identified Anderson as the perpetrator in a pre-trial lineup and again in court, stating that he was "certain" of his identification. Shives also positively identified Anderson's gun as the

---

victims who saw the gun testified that they believed it was real. It is immaterial for our analysis whether the gun was a toy. See page 871, infra.

one used to rob him.

On February 6, 1994, a light-skinned African-American male robbed Richard deMayo at gunpoint at an ATM in DeKalb County, near the Brookhaven area.[2] Afterward, the robber ordered deMayo to get into his car and drive away. Instead, deMayo followed the man in his car and used a cell phone to dial 911. DeKalb County police responded and chased the man down MARTA tracks, through a wooded area, and into an apartment complex on Peachtree Road in Fulton County where Andrea Largay was cleaning her car. The man ran toward Largay and demanded her car keys. She threw her keys to the ground and fled to call 911. The man could not start Largay's car, so he jumped into the car of Naomi Matusow, an elderly resident of the complex who was driving by at the time, and told Matusow to drive away. Matusow did as the man ordered and finally persuaded him to exit the car at a nearby intersection.

Matusow, who was too frightened to look at her kidnapper during the incident, could not identify Anderson. However, both deMayo and Largay were able to identify Anderson. In addition, Matusow's future husband, who was at the complex that day and saw Anderson's confrontation with Largay, identified Anderson from a pre-trial photographic lineup.

On February 15, 1994, a man approached Gina Crusco, the manager of a Buckhead orthodontic office, as she was walking to the bank to make a deposit and demanded that she give him the deposit envelope. Although Crusco initially tried to ignore the man, she handed him the envelope after he pulled a gun, grabbed her arm, and turned her around. The robber would not let Crusco proceed to the bank but instead ordered her to walk back to her office without turning around. Crusco identified Anderson at a pre-trial hearing as the man who robbed her, and she identified him again at trial, testifying that she had "no doubt" he was the culprit. Crusco also recognized Anderson's hat and jacket as clothing worn by the robber. Furthermore, a building janitor identified Anderson as the man he had seen the day before the robbery lurking about in shrubbery near the orthodontic office.

On February 21, 1994, a large, light-skinned African-American man approached the counter at an Oxford Book Store, showed clerk Tom Corley a gun, and demanded money. The man left after Corley complied, and Corley then called for help over the store's loudspeaker. Corley told employee Greg Halliday what had happened, and Halliday ran after the robber. Halliday caught up with the man

---

[2] Anderson was not charged in this case with the robbery of deMayo, presumably because the incident occurred in DeKalb County.

outside the store, where he was attempting to rob a customer. The man turned toward Halliday and, gesturing with his gun, told Halliday to go back in the store, which Halliday did. Corley could not identify Anderson, but he testified that Anderson's gun resembled the one used in the robbery. Halliday identified Anderson both at a pre-trial lineup and in court.

On March 18, 1994, a man described as "medium brown" entered Poppy's, a clothing store in Buckhead, showed his gun to sales clerk Joan Bone, and asked for money. Upon learning that Bone did not have the key to the cash register, the man ordered her back to the manager's office, where manager Peggy Horne and employee Kathy Roche were eating lunch. The man ordered all three women to the front of the store, where Horne opened the cash drawer and gave him money. The man left the store after telling the women to go into a dressing room and stay for five minutes. Horne identified Anderson at trial as "definitely the man" who robbed her. Roche did not testify at trial, but Bone identified Anderson as the perpetrator at a pre-trial photographic lineup and again in court.

On March 28, 1994, a man approached Charles Pickett while he was withdrawing money at a First Union ATM in Buckhead, engaged Pickett in conversation, and then demanded the money Pickett had withdrawn. After seeing that the man had a gun, Pickett gave him the money, and the man then asked him to withdraw more. Pickett saw the robber look away and bolted, but fell in the parking lot. Pickett looked up to see the man standing over him with the gun. The man ordered Pickett to return to the teller, but walked away when Pickett screamed for help. Pickett identified Anderson as the robber both at a pre-trial lineup and in court.

On April 3, 1994, Atlanta Police Detective C. M. Long was parked in an unmarked car next to the Bank South ATM where Donald Waite and Mason Shives had been robbed. Long had reviewed the victims' descriptions of the perpetrator in the string of Buckhead robberies, and he was watching the ATM and looking for a man who matched the descriptions. Long saw Anderson approach several pedestrians in the area. Anderson then approached Long's car and offered to sell him a newspaper, at which point Long realized that Anderson matched the descriptions of the robber. Long did a pat-down search of Anderson and found a fake silver handgun with a white pearl handle, then arrested him.

At trial, the State introduced various articles of clothing, eyeglasses, and hats that were found either on Anderson's person or at his residence and that matched the victims' descriptions of clothing worn by the robber. The State also introduced a notebook found at Anderson's residence that included writings such as "First Union Bank at closing time, Piedmont, woman in white car." Finally, the

State introduced evidence that Anderson had committed four earlier armed robberies — two in 1973 and two in 1983 — all at businesses in or near Buckhead.

Anderson challenges the sufficiency of the evidence as to the charges relating to Sara Hyatt, Tom Corley, Naomi Matusow, Peggy Horne, and Donald Waite on the grounds that these witnesses could not identify Anderson as the perpetrator. Other witnesses involved in the same incidents as Hyatt, Corley, Matusow, and Horne, however, *were* able to positively identify Anderson as the culprit. "The testimony of a single witness is generally sufficient to establish a fact." OCGA § 24-4-8. The fact that other witnesses were not able to identify Anderson goes only "to the weight of the evidence and the credibility of the testifying witness, which is solely within the purview of the jury." *Samuels v. State*, 223 Ga. App. 275, 276 (1) (477 SE2d 414) (1996). Because at least one witness was able to identify Anderson as the perpetrator with respect to each such robbery, the evidence was sufficient to support his convictions. Id.

Although Waite was not able to positively identify Anderson at trial, other evidence linked Anderson to the robbery of Waite. Waite was able to identify Anderson's jacket, hat, and distinctive gun. Moreover, other witnesses positively identified Anderson as the perpetrator of other robberies that were part of a continuing crime spree over a short period of time in the same area, including one other robbery at the same ATM. Such similar transaction evidence serves to prove identity. *Leaver v. State*, 211 Ga. App. 876-877 (1) (440 SE2d 760) (1994). "The weight to be given this evidence . . . was within the sole province of the jury." Id. The jury found Anderson guilty of the armed robbery of Waite, and we will not disturb its finding on appeal. Id.

Next, Anderson argues that there was insufficient evidence to support his convictions of aggravated assault against Andrea Largay and Greg Halliday. A person commits assault when he "[c]ommits an act which places another in reasonable apprehension of immediately receiving a violent injury." OCGA § 16-5-20. A person commits aggravated assault when he commits assault "(1) [w]ith intent to . . . rob" or "(2) [w]ith a deadly weapon or with any object, device, or instrument which, when used offensively against a person, is likely to or actually does result in serious bodily injury." OCGA § 16-5-21 (a). Largay testified that she felt "alarm" and "fear" when Anderson ran toward her, demanded her car keys, and attempted to drive away in her car. This testimony was sufficient to permit the jury to conclude that Anderson assaulted Largay with the intent to rob her. See OCGA § 16-5-21 (a) (1). Halliday testified that Anderson "turned his full attention to [Halliday]," "gestur[ed] with his gun," and ordered him to return to the book store, which Halliday did. This evidence

authorized a finding that Anderson assaulted Halliday with a deadly weapon. See OCGA § 16-5-21 (a) (2); *Hurt v. State*, 158 Ga. App. 722, 723 (282 SE2d 192) (1981) (victim's apprehension "may be inferred by the conduct of the victim such as when he retreats to secure his safety"). That Anderson's gun was a toy replica is of no import, because Halliday reasonably believed that it was real. *Mitchell v. State*, 222 Ga. App. 866, 867 (1) (476 SE2d 639) (1996).

Anderson also challenges the sufficiency of the evidence supporting his conviction for the armed robbery of Mason Shives, arguing there was no evidence that Anderson used a handgun to intimidate Shives. Pursuant to OCGA § 16-8-41, "[a] person commits the offense of armed robbery when, with intent to commit theft, he . . . takes [the] property of another from the person . . . by use of an offensive weapon, or any replica, article, or device having the appearance of such weapon." The mere fact that a person *has* a weapon is insufficient to establish armed robbery. *Hicks v. State*, 232 Ga. 393, 403 (207 SE2d 30) (1974). Rather, the weapon must be used to facilitate the theft. *Oliver v. State*, 232 Ga. App. 816, 817 (1) (503 SE2d 28) (1998). Here, Shives testified that he gave Anderson the money after Anderson revealed a gun in his waistband and told Shives that his life was not worth losing over $100. Thus, the jury could conclude that the gun had the "desired forceful effect of assisting to accomplish the robbery." Id. Thus, this is sufficient to constitute the offense of armed robbery. Id. at 818.

Anderson next contends that the evidence was insufficient to show he kidnapped Gina Crusco because she did not testify that she was abducted or stolen away. OCGA § 16-5-40 defines kidnapping as "abduct[ing] or steal[ing] away any person without lawful authority or warrant and hold[ing] such person against [her] will." Although there is an asportation element to this crime, " 'only the slightest movement of the victim is required to establish that element.' " *Estes v. State*, 234 Ga. App. 150 (505 SE2d 840) (1998). According to Crusco, Anderson would not let her walk to the bank, but took her arm and "turned [her] around the other way," telling her to walk back to her office. This evidence is sufficient for a jury to find Anderson guilty of kidnapping beyond a reasonable doubt. Id.

Finally, Anderson argues that there was no evidence that he committed aggravated assault against Marilyn Fillingim and Kathy Roche, neither of whom testified at trial. The victim's state of mind may be proved by circumstantial evidence, however, and may be inferred by the victim's conduct. *Williams v. State*, 208 Ga. App. 12, 13 (430 SE2d 157) (1993); *Hurt*, supra. Fillingim's co-worker Shawn Meade testified that Anderson pointed a gun at Fillingim and Meade and demanded money; that he directed them at gunpoint to the back of the store; and that he ordered them to sit on the floor and wait for

him to leave. Similarly, Roche's co-worker Joan Bone testified that Anderson ordered the Poppy's employees, including Roche, to the front of the store at gunpoint, waited to receive money from the cash register, and then ordered the women to wait in a dressing room for five minutes. Both Fillingim and Roche complied with Anderson's orders. Under these circumstances, there was sufficient evidence for the jury to conclude that Fillingim and Roche had a reasonable apprehension of receiving immediate, violent injury. Id.; *State v. Bolman*, 222 Ga. App. 534, 535 (474 SE2d 721) (1996) (presence of deadly weapon "would normally place a victim in reasonable apprehension of being injured violently").

2. Anderson argues that the trial court erred in allowing him to proceed pro se. We disagree. While a defendant has a right to counsel in any prosecution which could result in imprisonment, "the accused also has a fundamental right to represent himself in a . . . criminal trial when he voluntarily and intelligently elects to do so." (Punctuation omitted.) *Clarke v. Zant*, 247 Ga. 194, 195 (275 SE2d 49) (1981). Before deciding that a defendant has voluntarily and intelligently waived his right to counsel, the trial court must establish that the defendant is aware of the dangers and disadvantages of self-representation and is making his choice "with eyes open." *Callahan v. State*, 175 Ga. App. 303, 305 (333 SE2d 179) (1985). Whether the defendant's waiver of counsel is competent depends "upon the particular facts and circumstances surrounding [each] case, including the background, experience, and conduct of the accused." (Punctuation omitted.) *Reviere v. State*, 231 Ga. App. 329, 330 (1) (498 SE2d 332) (1998).

The record clearly establishes that Anderson knowingly and intelligently waived his right to counsel. Anderson repeatedly told the trial court that he wanted to fire his court-appointed counsel and proceed pro se. Upon inquiry from the trial court, Anderson indicated that he had studied law in prison, that he was familiar with the rules of evidence, that he had seen the indictment against him, and that he was aware of the sentences he could receive if found guilty. The trial judge told Anderson that he thought it was "unwise" for Anderson to represent himself and that he felt Anderson was not as familiar with the law and court procedure as a "trained lawyer," and the judge strongly urged Anderson not to represent himself. After Anderson insisted on representing himself, the trial court directed his court-appointed counsel to remain in the courtroom as a "technical advisor" available to assist Anderson upon request.[3] When Anderson voluntarily left the courtroom during part of the trial, the trial court ordered

---

[3] Anderson acquiesced to appointed counsel's role as technical advisor.

court-appointed counsel to take a more active role and make objections to preserve Anderson's rights. Finally, despite his advisory status, counsel — and not Anderson — argued Anderson's motions for directed verdict at the close of trial. Under these circumstances, the trial court did not err in permitting Anderson to proceed pro se. *Reviere*, supra.

3. In two enumerations of error, Anderson claims that the trial court violated his constitutional rights by allowing the trial to proceed when he was not present. Specifically, Anderson contends that the trial court prevented him from presenting a defense and denied him the right to cross-examine a key prosecution witness. These contentions lack merit.

Three times during trial proceedings, Anderson, who was in the custody of the sheriff, demanded to be taken back to his cell. The trial court allowed Anderson to leave the courtroom and told him that he had the right to return at any time. It appears from the record that when Anderson asked to return, his request was honored. As a result of Anderson's absences, he was not present during voir dire or for the examination of an important State witness, Detective Currence. Anderson thus failed to exercise his right to cross-examine Detective Currence, who was excused after testifying and was not called back when Anderson presented his case.

"[A] defendant has a right to be present at his trial, but [he] may waive that right." *Lonchar v. State*, 258 Ga. 447, 452 (2) (a) (369 SE2d 749) (1988). A defendant waives that right if he voluntarily absents himself from the proceedings. *Manus v. State*, 180 Ga. App. 658, 659 (1) (350 SE2d 41) (1986); *Croy v. State*, 168 Ga. App. 241 (1) (308 SE2d 568) (1983). Because Anderson's absences from the courtroom were voluntary, Anderson waived his right to be present and to cross-examine Detective Currence.

4. Anderson also asserts that the trial court hampered his right to present a defense by refusing to allow him to present evidence of other armed robberies that occurred in Buckhead following Anderson's arrest and incarceration. As the Supreme Court recently stated,

a defendant is entitled to introduce relevant and admissible testimony tending to show that another person committed the crime for which the defendant is tried. However, the proffered evidence must raise a reasonable inference of the defendant's innocence, and must . . . show that the other person has recently committed a crime of the same or similar nature.

(Citation and punctuation omitted.) *Klinect v. State*, 269 Ga. 570, 573 (3) (501 SE2d 810) (1998). "Evidence which can have no other effect

than to cast a bare suspicion on another, or to raise a conjectural inference as to the commission of the crime by another, is not admissible." *Bradford v. State*, 204 Ga. App. 568, 569 (420 SE2d 4) (1992). In this case, Anderson attempted to question Detective Long about other robberies in Buckhead. The trial court sustained the State's objection to the line of questioning unless Anderson could demonstrate a connection between the robberies and those with which Anderson was charged. Anderson made no attempt to establish a connection. In fact, Anderson's questioning of Long makes clear that Anderson was simply trying to establish that other robberies occurred in Buckhead after he was arrested. Accordingly, the trial court did not err in refusing to admit the evidence. *Azizi v. State*, 270 Ga. 709 (512 SE2d 622) (1999).

5. Anderson contends the trial court erred in denying his motion to suppress evidence of the pre-trial lineup at which six of the nine participating witnesses identified Anderson. According to Anderson, the lineup was so suggestive that evidence of it should have been excluded. We use a two-part test in determining whether evidence of pre-trial identification should be excluded: "The threshold inquiry is whether the identification procedure was impermissibly suggestive. Only if it was need the court consider the second question: whether there was a very substantial likelihood of irreparable misidentification." (Punctuation omitted.) *Odim v. State*, 228 Ga. App. 158, 159 (2) (491 SE2d 218) (1997). Out of the 18 witnesses who testified, 14 identified Anderson as the perpetrator. Of those fourteen, six identified Anderson from the pre-trial lineup. All six of these witnesses also positively identified Anderson in court. The remaining eight witnesses based their identification of Anderson either on his in-court appearance or on a photographic lineup. Pretermitting whether the physical lineup was suggestive, the fact that eight witnesses identified Anderson through other means than the physical lineup indicates that there was no " 'irreparable misidentification.' " Id. Moreover, Anderson's failure to object to the in-court identifications or the admission of evidence of the photographic lineup renders harmless any error that may have been associated with admitting evidence of the physical lineup. *Evans v. State*, 177 Ga. App. 820, 821 (1) (b) (341 SE2d 483) (1986); *Davis v. State*, 176 Ga. App. 650 (337 SE2d 431) (1985).

6. Anderson argues that the trial court erred in admitting into evidence the notebook recovered from his residence because the State never demonstrated the notebook's probative value. We disagree. The admission of evidence is a matter which rests largely within the discretion of the trial court. *Bierria v. State*, 232 Ga. App. 622, 626 (7) (502 SE2d 542) (1998). Unless the potential for prejudice substantially outweighs probative value, Georgia law favors the admission of

relevant evidence, no matter how slight its probative value. Id. The notebook at issue contained what appeared to be Anderson's notes from surveying potential robbery locations. The probative value of such evidence is clear, and the trial court did not abuse its discretion in admitting it.

7. Anderson contends that the trial court erred in denying his motion to suppress evidence of four of his prior armed robberies, which he claims were too remote in time and were not linked to him. The prior robberies occurred in 1973 and 1983 — 22 years and 12 years, respectively, before trial. Evidence of a defendant's prior criminal acts is admissible "if it is substantially relevant for some other purpose than to show a probability that the defendant committed the crime on trial because he is a man of criminal character." (Punctuation omitted.) *Rich v. State*, 254 Ga. 11, 13 (1) (325 SE2d 761) (1985). "The lapse of time between the prior occurrences and the offenses charged goes to the weight and credibility of such testimony, not its admissibility." *Cooper v. State*, 173 Ga. App. 254, 255 (325 SE2d 877) (1985) (19-year lapse did not bar admissibility). Thus, the age of the prior incidents does not bar their admission. Moreover, in this case, the lapses between the crimes are explained by Anderson's incarceration during the intervening years. See *Moore v. State*, 207 Ga. App. 412, 416 (1) (b) (427 SE2d 779) (1993). To the extent that Anderson claims error based upon the State's failure to link him to the similar transactions, he never objected on this ground. Accordingly, he has waived this issue and cannot raise it on appeal. *Newman v. State*, 233 Ga. App. 794, 795 (2) (504 SE2d 476) (1998). In any event, we note that Anderson essentially admitted at trial that he committed the prior crimes.

8. Anderson asserts that the trial court improperly denied his motion for severance of the offenses charged. "An abuse of discretion standard applies when reviewing denial of a motion to sever the trial of separate offenses." *Agony v. State*, 226 Ga. App. 330 (1) (486 SE2d 625) (1997). Offenses may be joined for trial

> [w]here . . . the similarity of the offenses reaches the level of a pattern which shows a common scheme, plan or a modus operandi so strikingly similar that the totality of the facts unerringly demonstrates and designates the defendant as the common perpetrator.

(Punctuation omitted.) *Sabo v. State*, 226 Ga. App. 106 (1) (485 SE2d 591) (1997). There is no abuse of discretion in denying severance " '[w]here the evidence of one crime would be admissible in the trial of the other crime.' " *Weaver v. State*, 206 Ga. App. 560, 561 (1) (426 SE2d 41) (1992). Further, the transactions need not be identical in

every respect to justify a denial of severance. See id. (refusing to sever cocaine sale and marijuana possession charges).

The ten robberies that form the basis of the charges against Anderson were remarkably similar in many respects and can be seen as one continuous crime spree. All ten robberies occurred during a three-month period at locations in close proximity both to each other and to MARTA bus stops.[4] The robber wore similar clothing in all incidents and often attempted to disguise his face with a hat, glasses, or sweater pulled up over his mouth. The robber invariably began the crimes behaving politely, earning himself the appellation "Gentleman Bandit," but he grew aggressive if challenged. He would approach the victims at either a Buckhead business or ATM, pointing or holding a gun, and would demand money. After getting the money, he would order ATM victims to drive away and not look back, and he would direct store victims to wait at the back for a brief period before leaving. The only incidents that do not fit this pattern are those involving Andrea Largay and Naomi Matusow. However, the charges relating to those incidents arose from Anderson's bungled robbery of Richard deMayo at an ATM — an incident which *did* fit the pattern — and, thus, severance was not required. See *Langston v. State*, 195 Ga. App. 873 (1) (395 SE2d 74) (1990). In light of these similarities, the trial court did not abuse its discretion in denying Anderson's motion to sever.

*Judgment affirmed. McMurray, P. J., and Andrews, J., concur.*

DECIDED JUNE 11, 1999 —
RECONSIDERATION DENIED JULY 8, 1999 — CERT. APPLIED FOR.

*Monique D. Moyse*, for appellant.
*Paul L. Howard, Jr., District Attorney*, for appellee.

---

[4] A MARTA bus card was found on Anderson's person when he was arrested.