A00A1360. PRYER v. THE STATE.
(537 SE2d 717)

JOHNSON, Chief Judge.

Rodney Jerome Pryer appeals from his conviction of armed robbery, burglary, and possession of a firearm during the commission of a felony, all resulting from a home invasion. Pryer contends the evidence was insufficient to support the jury's verdict and the trial court

---

erred in denying his motion to sever. Because the evidence was sufficient to support the verdict and because Pryer has failed to show actual harm in trying him with his co-defendants, we affirm his conviction.

1. Viewed in a light most favorable to support the jury's verdict, the evidence shows that on December 21, 1994, Frank Watts and Mike Vasser were in Watts' apartment when both doors were kicked in and six armed men entered. All the men had guns drawn and demanded money. Watts, who was in his kitchen, recognized co-defendant Chris Fortune from the neighborhood and saw Pryer and co-defendant Torri Odim come in behind Fortune. Watts specifically identified Pryer as one of the men who came down the hallway to the kitchen, pointed his gun at Watts and told him to lie down. Watts was positive in his identification of Pryer.

Watts' 17-year-old daughter Emmanuelle Spears was in the bedroom with her 12-year-old sister and heard the entry. She stepped into the hall and saw Pryer, Odim and Fortune. She recognized Odim and Fortune from the neighborhood. Spears testified that all three men had guns. Spears then locked herself and her sister in the bedroom. They climbed out the window, and Spears called 911. While talking to the police, Spears observed several men flee the apartment.

Responding to the call, Officer Barge noticed a car come out of the apartment complex, then back up behind a tree line where he could not see it. As Barge was turning into the apartment complex, the other car was backing up on the other side of a creek. Barge radioed a description of the car to other officers in the area and told them he believed the driver of the car was trying to hide from him.

When he arrived at Watts' apartment, Barge found Watts and Vasser very excited and upset. Spears and her sister, also agitated, returned to the apartment, and all four victims began describing the assailants and their clothing. During this conversation, Barge heard over his radio that another officer had spotted and stopped a car matching Barge's description of the car seen leaving the apartments.

When this officer spotted a vehicle matching the description given by Barge and traveling on the road indicated by Barge, he checked the license plate and discovered the plate was registered to another car. After turning on his blue lights to stop the car for this violation, the officer saw a lot of activity in the car. The car finally pulled over to a stop. There were six men in the car. One ran, taking something with him, before the officer could take them all into custody. The officer found a nine-millimeter handgun, fully loaded and cocked, and a crumpled $50 bill in the vehicle. Four hundred dollars had been taken from Watts in the robbery.

Officer Barge brought Vasser and Spears to the location of the

stop. Both identified the five men as the robbers, and Spears called Fortune by name. Watts had stayed at his apartment with his younger daughter, who was very upset. He later went to the police station where he identified the men as the robbers.

At trial, co-defendants Alvin McDowell and Karien Hodges testified that Pryer participated in the robbery and had a gun. Pryer testified that he was in the car but never got out of the car. According to his testimony, he and one of the co-defendants left Odim and parked the car to smoke crack cocaine. He denied owning a gun or knowing anything about the home invasion. He further testified that he was not wearing any of the clothing described by the victims. He points to a number of discrepancies in both the victims' testimony and his co-defendants' testimony.

The issue of which version of these events to believe was for the jury, which resolved the credibility issue in favor of the state.[1] This court does not weigh the evidence or determine witness credibility; we only determine the sufficiency of the evidence.[2] The evidence was sufficient under *Jackson v. Virginia*.[3]

2. Pryer next claims the trial court erred in denying his motion to sever his trial from Odim's. It is well established that the decision whether to grant a motion to sever in a nondeath penalty case is within the discretion of the trial court and will not be disturbed absent an abuse of that discretion.[4] We find no such abuse in this case.

The burden is on Pryer to demonstrate more than the possibility that a separate trial would provide him with a better chance of acquittal; he must establish a clear showing of prejudice and a denial of due process in the absence of severance.[5] Pryer failed to make such a showing. The record clearly demonstrates that Pryer and Odim were jointly indicted for the same offenses, which involved the same witnesses, and the evidence indicated that they acted in concert in committing the home invasion.[6]

Pryer claims evidence admitted to convict Odim harmed him. Specifically, he alleges that "his conviction was the result of identification testimony impermissibly bolstered or confused with Spears' testimony concerning her familiarity and identification of co-defendants. . . ." Pryer also claims that Odim's reputation as "Triggerman" and his affinity for firearms led to the jury's determination

---

[1] OCGA § 24-9-80.

[2] *Odim v. State*, 228 Ga. App. 158, 159 (1) (491 SE2d 218) (1997).

[3] 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); see *Odim*, supra.

[4] *Dixon v. State*, 268 Ga. 81, 83 (2) (485 SE2d 480) (1997).

[5] *Butler v. State*, 270 Ga. 441, 446 (4) (511 SE2d 180) (1999); *Dixon*, supra.

[6] *Hall v. State*, 143 Ga. App. 706 (1) (240 SE2d 125) (1977).

that Pryer had a gun in light of the conflicting evidence that Pryer did not possess a gun. These arguments lack merit. While the victims recognized Odim from the neighborhood and while there was evidence that Odim was nicknamed "Triggerman," this testimony did not harm Pryer. The victims also positively identified Pryer as one of the gunmen who entered the apartment, and his co-defendants testified that Pryer was involved in the home invasion and had a gun. In addition, contrary to Pryer's assertion, the evidence did not show that his participation in the home invasion was any less strong than Odim's.

Pryer also asserts he was harmed due to the existence of antagonistic defenses. The mere fact that a co-defendant's defenses are antagonistic is insufficient to warrant separate trials.[7] A showing of harm is necessary.[8] Pryer has made no such showing. His complaint on appeal that he was not able to introduce evidence that he only had $14.15 in his possession at the time of his arrest does not show the requisite harm. At trial, Pryer's counsel joined in the objection to this evidence and joined the motion to exclude this evidence regarding whether money was actually taken from Pryer and his co-defendants and in what amount. One cannot complain of a trial court's ruling which the party's own trial tactics or conduct procured or aided in causing.[9] The fact that Pryer alleged he did not have much money in his possession at the time of his arrest does not exculpate him from the offenses. The victims positively identified Pryer, and his co-defendants testified that Pryer participated in the home invasion. Pryer has failed to show how any defense used by Odim was antagonistic to his own defense so as to amount to a denial of due process.[10]

Under the circumstances, we find no showing of actual prejudice, no denial of due process, and no abuse of discretion by the trial judge in denying the motion to sever.

*Judgment affirmed. Smith, P. J., and Phipps, J., concur.*

DECIDED JULY 21, 2000.

*Morriss, Lober & Dobson, Bruce F. Morriss, Daniel Shim*, for appellant.

---

[7] *Dixon*, supra.
[8] *Davis v. State*, 266 Ga. 801, 802 (3) (471 SE2d 191) (1996).
[9] *Holcomb v. State*, 268 Ga. 100, 103 (2) (485 SE2d 192) (1997).
[10] *Butler*, supra at 447.

*Paul L. Howard, Jr., District Attorney, Bettieanne C. Hart, Assistant District Attorney*, for appellee.